For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., and ST. PAUL, J., absent.

154 So. 622

## GARRISON v. CITY OF SHREVEPORT.
### No. 32785.

March 26, 1934.

Cecil Morgan, of Shreveport, for appellant.

Aubrey M. Pyburn and Robert G. Chandler, both of Shreveport, for appellee.

H. Payne Breazeale, of Baton Rouge, for City of Baton Rouge and others, amici curiæ.

ODOM, Justice.

The Municipal Council of the City of Shreveport, by resolution, authorized the mayor to prepare and submit formal application to the Federal Emergency Administration of Public Works, for financial assistance in the construction of certain designated municipal improvements and for the repair and reconstruction of others. The mayor was authorized and directed to apply for a loan equal to 70 per cent. of the costs of these projects and for a grant of the remaining 30 per cent. The application was made and a majority of the projects submitted were approved.

In order to raise funds with which to pay its 70 per cent. of the costs of these improvements, the city gave notice of its intention to issue excess revenue bonds as authorized by subdivision (e), § 14, art. 14, Constitution of 1921, and Act No. 40 of 1922. When this notice was given, the plaintiff, who is a resident taxpayer of the city, brought the present proceedings to enjoin the city from issuing such bonds on the following grounds:

"That the issuance of said bonds for the purposes aforesaid is ultra vires of the powers of the city of Shreveport. That the city of Shreveport has no authority to issue excess revenue bonds for the purposes afore-said under Act 40 of 1922 or any other statute of this state."

The city excepted to the petition on the ground that it set out no cause of action. This exception was sustained and plaintiff appealed.

It is conceded by counsel for plaintiff that the governing authorities of municipal corporations may, after making provision for the payment of all statutory and ordinary charges, fund into bonds the avails or residue of the tax authorized by the Constitution, for the purpose of making municipal improvements, this being authorized by paragraph (e), § 14, art. 14 of the Constitution and Act No. 40 of 1922. It is conceded further that the designated projects named in the application are "municipal improvements" in the sense in which that term is ordinarily used at the present time. But the contention is that some of the projects named are not embraced within the terms of section 4, Act No. 40 of 1922, which, it is argued, inhibits municipal corporations from issuing such bonds except for the following specific purposes, named in the act:

"Constructing bridges; purchasing or constructing waterworks, sewers, drains, lighting and power plants, artificial ice and refrigerating plants; public parks; school houses; teachers' homes and improvements."

Some of the improvements which the city proposes to make are not, in terms, included within these designated classes, and it is argued that inasmuch as they are not specifically included, the Legislature intended that they be excluded, and counsel for plaintiff

invoke the maxim, "Inclusio unius est exclusio alterius."

We cannot sanction this interpretation of section 4, Act No. 40 of 1922. That section of the act must be read as a whole and all its parts construed together. It provides that the governing authorities of municipal corporations, including cities, towns, and villages, "may fund into bonds of the municipal corporation the avails or residue of their general alimony tax for the following purposes, and none other, to wit: *paving, improving and maintaining streets or alleys and for all municipal improvements*, namely, constructing bridges; purchasing or constructing waterworks, sewers, drains, lighting and power plants, artificial ice and refrigerating plants; public parks; school houses; teachers' homes and improvements." (Italics ours.)

It is argued that no municipal improvements were intended to be included except those named following the word "namely." If, as contended, the Legislature intended by using the word "namely" to exclude all municipal improvements except those specifically mentioned following that word, then a municipality could not use the proceeds of such bonds for paving, improving, and maintaining streets or alleys, because such improvements are not mentioned and cannot be said to be included within the meaning of any of the terms following the word "namely." And yet in a clause which precedes the word "namely," the act says in so many words that bonds may be issued for "paving, improving and maintaining streets or alleys and for all municipal improvements."

To give the act the meaning suggested

would not only exclude such municipal improvements as the paving of streets and alleys, but the constructing of municipal court buildings, city jails or prisons, municipal auditoriums, etc. Such a construction would make the act a piece of absurd legislation. The lawmaker could not have intended to provide in one clause of the act that municipalities could use the proceeds of such bonds to pave, improve, and maintain streets and alleys and for all municipal improvements and to wipe out that provision with a clause immediately following.

The act, in section 4, contains a general grant of authority to municipal corporations to make all "municipal improvements." Immediately following this clause is the word "namely," and following it there is a specified list of improvements. The office of the word "namely" following the general grant of authority was not to exclude any particular municipal improvement which might be reasonably included within the general grant, but to make certain the inclusion of those specifically named.

The word "namely" follows immediately the clause "and for all municipal improvements." The word "namely," according to Webster, has the same meaning as the word "videlicet," which means literally "it is easy to see, one may or can see." The word "videlicet" is derived from the Latin words "vide," to see, and "licet," it is permitted. It is a name given to the phrases "to wit," "that is to say." 40 Cyc. 204. "To wit" is "a phrase, the office and effect of which is to particularize what is too general in a preceding sentence, and to render clear and of certain application, what might seem other-

wise doubtful or obscure; words used to call attention to a more particular specification of what has preceded." 38 Cyc. 591. " 'To wit,' called 'videlicet,' is a phrase which in its popular sense means 'namely.'" 63 C. J. 86. " 'Namely' is a term which imports interpretation, that is, indicates what is included in the previous term." C. J. 364.

By using the word "namely" in the statute immediately following the clause "and for all municipal improvements," and then following the word "namely" with a specified list of improvements, the lawmaker merely intended to make it clear that those mentioned in the list were to be included within the meaning of the general term "all municipal improvements," or to "render clear and of certain application what might seem otherwise doubtful or obscure."

The purpose of Act No. 40 of 1922, as expressed in its title, was "to authorize parishes and municipal corporations to fund into negotiable bonds the avails or residue of their general alimony tax authorized by the Constitution and regulating and prescribing the procedure therefor."

The particular constitutional provision referred to is paragraph (e), § 14, art. 14, of the Constitution of 1921, which, as relates to municipal corporations, reads as follows:

"And the governing authorities of municipal corporations, for the purpose of paving, improving or maintaining streets or alleys *and for all municipal improvements*, including public parks, after making provision for the payment of all statutory and ordinary charges, may fund into bonds * * * the avails or residue of the tax authorized by this Constitution."

It will be noted that there is no restriction as to what municipal improvements may be constructed with the proceeds of such bonds. Aside from streets, alleys, and public parks, no particular improvements are specified. But an all-inclusive clause is used, to wit, "and for all municipal improvements." That means all such improvements as are authorized by the Constitution. By referring to paragraph (b), § 14, art. 14, we find listed as improvements which municipal corporations may make the following:

"Opening, constructing, paving and improving streets, roads and alleys, constructing bridges, purchasing or constructing waterworks, sewers, drains, lighting and power plants, artificial ice and refrigeration plants, public parks, school houses, teachers' homes, and other public buildings, and works of public improvement, together with all necessary equipment and furnishings therefor."

It will be noted that this paragraph specifically mentions all those improvements specified in section 4, Act No. 40 of 1922, and goes farther by mentioning schoolhouses and other public buildings and works of public improvement.

Act No. 40 of 1922 merely provides the procedure or machinery for putting into effect paragraph (e), § 14 of art. 14 of the Constitution. Act 40 of 1922 and the Constitution must therefore be construed together. The Constitution in plain terms authorizes the use of the proceeds of such bonds for constructing all municipal improvements, and the evident purpose of the act was to enable

municipal corporations to do what the Constitution authorizes. It is doubtful whether the Legislature could have limited the purposes for which such bonds were to be issued had it so intended. Manifestly, it did not intend to do so, for the act contains a general grant of authority to use the proceeds of such bonds for the purpose of making all municipal improvements.

There is nothing in the text of the act to indicate that it was intended that the designated projects should be exclusive of all others. On the contrary, the act contains a general grant of power to municipalities to make all municipal improvements. This general grant of power is followed in the act by a specified list of improvements, but it is clear that, standing alone, the general grant would include the things specified and more, and the context shows that the enumerated list was not intended to be exclusive but inclusive. Such being the case, under proper rules of construction, the general grant must be given full effect. Springer et al. v. Government of the Philippine Islands, 277 U. S. 189, 48 S. Ct. 480, 72 L. Ed. 845.

The maxim "Inclusio unius est exclusio alterius," has no application. This maxim expresses a rule of construction and serves only as an aid in discovering legislative intent where such intent is not otherwise manifest. City of Shreveport v. Price, 142 La. 936, 77 So. 883.

The Legislature's intent is here manifest. For the reasons assigned the judgment appealed from is affirmed.

ST. PAUL, J., absent.