289 So.2d 531 (1973)
WEIGHT WATCHERS OF LOUISIANA, INC.
v.
James Q. RYALS.
No. 9639.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 11, 1974.
Writ Granted April 5, 1974.
Cameron C. Gamble, New Orleans, for appellant.
Charles W. Franklin, Baton Rouge, for appellee.
Before SARTAIN, TUCKER and WATSON, JJ.
TUCKER, Judge.
Plaintiff employer, Weight Watchers of Louisiana, Inc., seeks to enforce a contract whereby defendant James Q. Ryals, its former employee, agreed that upon termination of his employment he would not compete with Weight Watchers in the manner set forth in the contract for a period of two years and within a three hundred mile radius of plaintiff's offices. Defendant, a former "Weight Watcher" himself, who had lost approximately one hundred pounds while participating in plaintiff's program, had begun part-time employment with plaintiff on or about May 29, 1970. On August 30, 1970, defendant became a full time employee of plaintiff and continued to work for it in various capacities until October 19, 1972, when he resigned to go into business with "Diet Workshop." Plaintiff brought suit to enjoin him from all business activities in breach of its contract with him. The trial court ruled in favor of the defendant and granted judgment rejecting plaintiff's demands. The plaintiff has appealed, stating two grounds of error as follows:
I. The Lower Court erred in following National Motor Club vs. Conque, 173 So. 2d 238 (La.App. 3d Cir. 1965) and holding that plaintiff must prove it expended substantial sums in advertising defendant's connection with plaintiff's business rather than following this Circuit's decision in Aetna Finance Company vs. Adams, 170 So.2d 740 (La.App. 1st Cir. 1964).
II. The Lower Court erred in finding that plaintiff failed to prove that it had incurred substantial expense in the training of the employee or the advertisement of employer's business under La.R.S. 23:921.
*532 After a careful review of the jurisprudence interpreting R.S. 23:921, as amended in 1962, which governs this case, we conclude that the trial judge was correct in using the Conque case as the basis of his decision, rather than the Aetna Finance case. As the trial judge pointed out, these two cases seem to be in conflict in interpreting R.S. 23:921; yet the Louisiana Supreme Court denied applications for writs of certiorari in both cases, stating that the respective appellate courts were correct in the interpretation of the facts of the particular cases before them. We agree with Professor J. Denson Smith that "It is to be regretted that, in view of the fundamentally diverse holdings in the Aetna Fin. Co. and National Motor Club cases, the Supreme Court did not take the opportunity to save the law in this area from a lack of clarity which has proved to be troublesome." [26 La.L.R. 497 (1966)] In the numerous cases interpreting the Conque and Aetna Finance cases, the courts have been very careful to distinguish the facts of those cases from the case being decided without interpreting the pertinent words of the statute "... an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in ..." (emphasis added). We are aware of the language used by our brothers of this Circuit in the Aetna Finance case, at 170 So. 2d 744, which reads as follows: "... where, as here, the legislature has itself spoken in clear and unambiguous language, the Court properly will not substitute its opinion of public policy for that which has been specifically expressed by the legislature." The Louisiana courts have consistently interpreted R.S. 23:921 as stating a declaration of public policy by the legislature against restrictions on the spirit of free labor. Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 264 (U.S.D.C. E.D.La.1967). We could easily find that the facts of the Aetna Finance case distinguish it from the instant case; for in the former, the employee Adams was undergoing training at all times, since, even though he was a manager he was supervised directly by an officer of the company which furnished him with various manuals of operation and legal bulletins at an expense to the company. We prefer to say, however, speaking almost nine years after the decision of the Aetna case, that the "clear and unambiguous language" of R.S. 23:921 must be interpreted in the light of the legislative intent of the 1962 amendment, which was to permit a limited exception to a broad public policy. As the organ of the court in the Conque case, Justice Tate opined as follows:
"Even prior to the enactment by Act 33 of 1934 of this prohibition against exaction of noncompetitive agreements from employees, they were consistently held to be unenforceable. Cloverland Dairy Products v. Grace, 180 La. 694, 157 So. 393 (1943); Blanchard v. Hager, 166 La. 1014, 118 So. 117 (1928). See 27 Tul. L.Rev. 364 (1953). (In most states other than Louisiana, however, noncompetitive contracts are recognized if reasonably restricted as to time and area. See Annotations at 41 A.L.R.2d 15 and 43 A.L. R.2d 94.) In the absence of an enforceable contract to other effect, an employee has the absolute right to actively serve a business competing with his former employer after leaving the latter's service, Jones v. Ernest & Ernest, 172 La. 406, 134 So. 375 (1931); as, for instance, does a former officer who actively competes with his former corporate principal, Marine Forwarding & Shipping Co. v. Barone, La.App.Orl., 154 So.2d 528 (1963).
As noted in these decisions, their essential basis is the right of individual freedom and of individuals to better themselves in our free-enterprise society, where liberty of the individual is guaranteed. A strong public policy reason likewise for holding unenforceable an agreement exacted by an employer of an employee not to compete after the latter leaves his employment, is the disparity in bargaining power, under which an employee, *533 fearful of losing his means of livelihood, cannot readily refuse to sign an agreement which, if enforceable, amounts to his contracting away his liberty to earn his livelihood in the field of his experience except by continuing in the employment of his present employer.
These fundamental principles must be borne in mind in interpreting and applying to the present facts the 1962 amendment providing a limited exception to the above-quoted basic provision of LSA-R. S. 23:921, that noncompetitive agreements exacted of employees `shall be null and unenforceable in any court.'
The 1962 amendment did not repeal the broad statutory provision that noncompetitive agreements exacted from an employee were null and unenforceable. See Appendix A. The amendment simply added a proviso excepting those noncompetitive agreements of limited territory and duration `in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in.' In view of the retention of the broad provision for the unenforceability of such noncompetitive agreements and in the context of the prior jurisprudence, the apparent purpose of the 1962 amendment is to protect an employer only where he has invested substantial sums in special training of the employee or in advertising the employee's connection with his business." 173 So. 2d at 240.
We concur in the judgment of the trial court in concluding that the plaintiff had failed to establish that it had "substantial expense," as required by the rationale of the Conque case, in the training of the employee or the advertisement of employer's business. We can do no better than to quote in part from the well-grounded reasons of the trial judge in support of our affirming his judgment.
". . . . . .
This Court will follow the interpretation of the exceptions to the statute as presented in Conque, believing them to be a more correct holding of the legislative intent of the 1962 amendment. The following language of the Conque case contains the interpretation that the facts of this case will be measured against.
. . . . . .
In the present case, defendant Ryals was employed on May 29, 1970, on a part-time basis as a lecturer one or two evenings a week, earning ten dollars per lecture. Prior to May, 1970, he had been a member of Weight Watchers, Inc., and by virtue of his participation had lost more than a hundred pounds. From May through August of 1970, defendant continued his employment with the Louisiana National Guard as an administrative Technician, lecturing for defendant at night on a part-time basis. During the previous twelve years, defendant's National Guard employment required him to give lectures and instructions to large groups of men, there sometimes being as many as a battalion of six hundred men.
From May through July, 1970, defendant attended seven training workshops for two hours each time. On August 30, 1970, he became an area manager for Weight Watchers and in September of 1970, he spent one week in the field with a supervisor, training to be an area manager. About four times a year he met in New Orleans with other area managers for staff meetings with executive personnel, there being nine such meetings held between November, 1970, and September, 1972. Defendant's living expenses (lodgings and meals) were paid by the employer as in the case of any company business. Evidence establishes that the purpose of these meetings was to exchange ideas and discuss business methods with other area managers. Plaintiff's Exhibits 10 and 11 reflect that air transportation charges of $72.00 and $226.00, respectively, were paid for business trips to Dallas and New York; this *534 Court is unable to determine that either of these expenditures were for `training.'
The figure of ten thousand dollars was mentioned by plaintiff as the average cost to train an employee. There is no evidence to support this figure nor to show the actual cost of training defendant. Plaintiff made the point that this would include an unproductive period during which the average employee would be drawing a salary. The evidence fails to establish that any of defendant's salary should be regarded as a training expense of this defendant.
Miss Gravolet identified several manuals and instruction booklets published and made available to defendant by plaintiff, however, these materials must be regarded as manuals of operating procedures necessary to establish uniformity in the conduct of plaintiff's business, and their cost should not be classified as a training expnese of this defendant.
The parties stipulated that no paid public media advertising was done by plaintiff that carried Mr. Ryals' name or picture as part of the advertising. Plaintiff's Exhibits 2 and 3 are news stories, one carrying defendant's picture, and the other his name. Various proclamations were also obtained from Governor McKeithen and Mayor Dumas; Mr. Ryals was not mentioned in either of the proclamations. The news stories mentioned above were at no expense to plaintiff. Plaintiff Exhibits 4 through 9 are issues of a `house organ' published by plaintiff and sent to approximately twenty thousand members of plaintiff's Weight Watcher Clubs. The articles and pictures which appear mentioning Mr. Ryals do so only in connection with his activities as area manager and they feature him in no different light or business connection than the manner in which various members, executives and other area managers are featured. In short, this Court does not consider Mr. Ryals' appearances in plaintiff's Exhibits 4 through 9 as advertisement in connection with the business. This Court finds that the evidence fails to indicate that plaintiff invested substantial sums to train defendant; to the contrary, the nature of plaintiff's business was such that any person having the ability to speak in public, as defendant had, and average administrative talents, already possessed by defendant when employed by plaintiff, could have handled this job. Expenses claimed by plaintiff as training expenses were more in the nature of normal overhead expenses in the conduct of its business such as incurred by any promotional type undertaking. Evidence establishes that plaintiff's advertising budget was approximately $70,000.00 per year, but the evidence fails to establish that any sums were expended advertising this employee's connection with the business.
Therefore, this Court holds that the provisions of the employment contract which seek to prohibit defendant from engaging in a competing business are null and unenforceable by virtue of the provisions of R.S. 23:921." Tr. 27-31.
. . . . . .
In our opinion the trial court was correct in its decision that the non-competing part of the instant contract does violence to the provisions of R.S. 23:921, and is unenforceable.
The judgment of the trial court is affirmed at appellant's costs.
Affirmed.