335 So.2d 713 (1976)
GOLD & SUCKLE, INC., Plaintiff-Appellee,
v.
Stephen L. SUCKLE et al., Defendants-Appellants.
No. 12940.
Court of Appeal of Louisiana, Second Circuit.
July 7, 1976.
Rehearing Denied August 3, 1976.
Writ Refused October 29, 1976.
*714 Nelson & Achee, Ltd. by Harry R. Nelson, Shreveport, for defendants-appellants.
Naff, Kennedy, Goodman, Stephens, Donovan & Parnell by Frank S. Kennedy and William M. Comegys, III, Shreveport, for plaintiff-appellee.
Before BOLIN, MARVIN and JONES, JJ.
En Banc. Rehearing Denied August 3, 1976.
MARVIN, Judge.
Defendants, Stephen and Barry Suckle, appeal from the issuance of a preliminary injunction against them enforcing their agreement not to compete with plaintiff, Gold & Suckle, Inc. We affirm.
On August 31, 1973, Gold & Suckle, Inc., purchased the outstanding corporate stock of Gold and Suckle Pipe and Supply Co., Inc. and Gulf Southern Supply Co., Inc. These corporations were engaged in the business of buying and selling surplus valves, fittings and flanges. The defendants and other members of the Gold and Suckle families, owned and operated the businesses. As their part of the sales price, defendants received $200,000.00 each for their stock in the corporations.
At the time the sale of the corporate stock was being negotiated and consummated, James Latham, president of the plaintiff purchasing corporation, was also negotiating with defendants to retain their business expertise and experience as managers for the purchasing corporation. Defendants continued their employment with the purchasing corporation during this time without interruption. Written employment contracts containing agreements not to compete were submitted to defendants for their approval at the time of the August 31 sale and at later dates, but were not signed by defendants. Eventually, on December 14, 1973, defendants signed employment contracts containing an agreement not to compete. Defendants' employment contracts are identical in terms and we shall treat them as one.
The agreement not to compete, as amended, reads:
"For a period of six (6) years from the date of employment of Employee by Employer, *715 Employee will not, unless acting as an officer or employee of Employer or any of its subsidiaries, directly or indirectly own, manage, operate, join, control or participate of [sic] have any interest in, or be connected as an officer, employee, partner or otherwise with, any business conducted in whole or in part in any of the States of Texas, Louisiana, Oklahoma, Arkansas, Mississippi, Alabama, Georgia, Florida, South Carolina, North Carolina or Tennessee which is substantially similar to the business presently conducted by GOLD AND SUCKLE PIPE & SUPPLY CO., INC. (hereinafter called "G-S")., i.e. the purchase for resale or reconditioning of valves for use in the oil, gas and other industries. Employee acknowledges that the remedy at law for any breach of the foregoing will be inadequate, and that Employer shall be entitled to injunctive relief.
"If this contract is terminated by either the Employer or Employee, Employer shall pay Employee the sum of TEN THOUSAND ($10,000.00) DOLLARS per year for the remainder of the six (6) year term of this contract, such compensation being considered consideration for the foregoing restrictive covenant. Such $10,000.00 shall be payable in monthly installments and shall be prorated for payments during any one (1) year in the event the contract is terminated other than at any anniversary date of this Agreement."
The record shows that defendants became dissatisfied with their situation as co-managers of the plaintiff corporation in 1975. They commented to subordinate employees of their dissatisfaction and suggested to several subordinates that it would be to the economic interest of the subordinates to leave their employ with the plaintiff corporation and accept employment with defendants in a new business to be owned by defendants. Having access to plaintiff corporation's records containing names and addresses of suppliers and customers, defendants reproduced and apparently amassed some of this information for themselves. At one time, one defendant went to plaintiff's offices at 4:00 a.m. for such purpose.
On November 17, 1975, plaintiff terminated defendants' employment. About this time or shortly after, defendants legally incorporated as Flanges and Fittings, Inc., to engage in the specific business of buying and selling of weld fittings and flanges, but not valves. Proceedings for injunctive relief were brought by plaintiff on December 29, 1975.
Agreements not to compete are obligations not to do. LSA-C.C. Art. 1926, et seq. Where damages are inadequate, specific performance of an obligation not to do may be compelled through injunctive relief. LSA-C.C. Arts. 1927 and 1929. Articles 1926, 1927 and 1929 of the Civil Code establish the essential conditions needed to obtain injunctive relief in enforcing agreements not to compete. See also LSA-C.C.P. Art. 3601.
Injunctive relief may be used in enforcing valid agreements not to compete. The courts of this state have on several occasions upheld, as valid, agreements not to compete which were ancillary to the sale of a business and its good will. See Moorman & Givens v. Parkerson, 127 La. 835, 54 So. 47 (1911), and Hickman v. Branan, 151 So. 113 (La.App.Orl. Cir. 1933). This agreement expressly contemplates injunctive relief.
We must first decide whether the agreement not to compete under consideration is ancillary to or is an incident of the sale of the business on August 31, 1973, or whether it is a separate and independent employee-employer contract subject to the provisions of R.S. 23:921. While the employment contract was not signed for some three and one-half months after the sale of the business, the record shows that the employment *716 contract containing the agreement not to compete was an incident of and was ancillary to the sale. The record shows that negotiations for the sale of the business and the retention of defendants as managerial employees of plaintiff corporation were conducted simultaneously. The several drafts of the employment contract contained a similar, but not identical, agreement not to compete. James Latham, plaintiff's president, considered the retention of defendants by the plaintiff corporation as a moving force or essential cause behind the purchase because he was not experienced in this particular business and it was his practice to have experienced management to conduct the day-to-day operations of the several corporate businesses owned by him.
We are required then to test the restriction in question as to its reasonableness in time and geographic limitation and for the existence of consideration, under the mandate of strict construction. See cases cited supra, Desselle v. Petrossi, 207 So.2d 190 (La.App. 4th Cir. 1968) and 33 La.L.R. 94.
A payment to each defendant of $10,000.00 per year is also provided in the agreement even if terminated by employer or employee for the six year term. See agreement quoted supra. Consideration is present. The time the restriction is to apply (six years) is stated and is reasonable. Reasonable geographic limitation (11 southern states) is also present. In Desselle, supra, the court noted the difficulty of laying down a general rule as to reasonableness in such restrictions and held that each case must be decided on its own facts. We hold the restriction is reasonable in all respects and that injunction is the proper remedy.
The term strict construction was interpreted by this court when considering a city ordinance in Gamburg v. City of Alexandria, 85 So.2d 276 (La.App.2d Cir. 1956). Whether contract (law between the parties) or statute (legislatively enacted law), the term strict construction has similar connotations and what was said in Gamburg is appropriate here. Applying the mandate of strict construction, courts are not to expand the language at issue by implications or equitable considerations. Strict construction, however, does not confine itself solely to situations within the letter of the law or contract, but to situations as well, which are clearly included within its spirit or reason. See Gamburg, supra. We do not find the lower court's interpretation expanded, by implication or equitable considerations, the restriction in question.
The lower court admitted evidence to show what business Gold & Suckle Pipe and Supply Co., Inc. was engaged in at the time of and before the sale and what business the plaintiff corporation was engaged in after the sale. The lower court said:
"The disputed provision of the employment contract prohibits defendants from engaging in business `which is substantially similar to the business presently conducted by Gold & Suckle Pipe & Supply Company, Inc., i.e. the purchase for re-sale or re-conditioning of valves for use in the oil, gas and other industries.' Ample evidence has been introduced to convince the Court that the meaning of the words `the purchase for re-sale or re-conditioning of valves for use in the oil, gas and other industries' contemplates the sale of flanges and weld fittings to be used with the valves. While there are some companies selling specialized valves without flanges and fittings, in the used or surplus valve business the sale of flanges and weld fittings is contemplated. Those companies mentioned by defendants that sold only flanges and fittings are not in the same type business as the business of used, surplus and re-conditioned valves as conducted by Gold & Suckle Pipe & Supply Company, Inc.
"In addition, the use of `i.e.', which means `id est', or `that is', or `that is to *717 say', has the same meaning as `namely'. See Garrison v. City of Shreveport, 179 La. 605, 154 So. 622, page 623. In the Garrison case cited above the court held that the intent of the statute therein construed was to be such as to give effect to both clauses, the clause before the use of `namely' as well as the clause that followed. That case also said that the inclusion of one matter after the use of the word `namely' did not intend to exclude other matters, because that maxim serves only where such intent is not otherwise manifest.
"The use of the words `i.e.' the purchase for re-sale or re-conditioning of valves for use in the oil, gas and other industries' was merely the introduction of another way of putting what had already been said by the words `which is substantially similar to the business presently conducted by Gold & Suckle Pipe & Supply Company, Inc.'
"The testimony of all the witnesses was the old corporation, Gold & Suckle Pipe & Supply Company, Inc., sold valves, flanges and welding fittings and the flanges and welding fittings were a substantial part of the business. Plaintiff's witnesses testified that the gross sales of the corporation consisted of 40-50% of the sale of flanges and welding fittings. At the time the business was purchased there was a three-year inventory on hand of these items, the sale of which had been temporarily suspended because a shortage in the market was predicted and the management did not want to deplete their entire stock in short order, but desired to sell it out slowly while disposing of some less desirable merchandise.
"Considering the above wording, the instrument, the actions of the parties and the substantial nature of the business purchased and the sales price, it is my opinion that there is no doubt but what the contract was intended to prohibit such conduct by defendants with reference to flanges and weld fittings, and I think the contract is clear in this regard."
We find that the lower court properly admitted evidence to show the continuity of the business because the restriction itself called for resolution of whether the business before the sale and the business after the sale were "substantially similar." The terms of the restriction were not varied or expanded by parol, as defendants contend. See 35 La.L.R. 795 and cases cited therein. The businesses before and after the sale were the same and almost without exception with the same customers and suppliers and employees, according to our interpretation of the evidence. The spirit, reason, and the letter of the restriction clearly call for the conclusion reached below and here.
The injunction below prohibited defendants from "contacting any of plaintiff's employees in an effort to induce them to leave plaintiff's employment. . ." as well as from competing in any manner with the business of plaintiff. While defendants' contacts with plaintiff's employees were for the specific purpose of persuading them to engage in competition with the plaintiff, and therefore, were in violation of the restriction, the language in the injunction itself would prevent defendants from inducing plaintiff's employees to accept employment in a situation where they would not in fact be in competition with plaintiff. We shall amend the injunctive order in this respect to conform exactly with the language of the restriction. Accordingly,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a preliminary injunction issue against the defendants, Stephen L. Suckle and Barry No. Suckle, for a period of six (6) years from the date of their employment, August 31, 1973, with Gold and Suckle, Inc. prohibiting and enjoining them from directly or indirectly *718 owning, managing, operating, joining, controlling or participating or having any interest in, or being connected as an officer, employee, partner, or otherwise with, any business conducted in whole or in part in any of the states of Texas, Louisiana, Oklahoma, Arkansas, Mississippi, Alabama, Georgia, Florida, South Carolina, North Carolina, or Tennessee which is substantially similar to the business formerly conducted by Gold and Suckle Pipe & Supply Co. Inc., (predecessor to Gold and Suckle, Inc.), i.e. the purchase for resale or reconditioning of valves for use in the oil, gas and other industries.
As amended, and at appellants' cost, the judgment is
AFFIRMED.