479 So.2d 469 (1985)
William H. DAIGLE
v.
STANDARD COFFEE SERVICE COMPANY, A DIVISION OF WM. B. REILY AND CO., INC., et al.
No. 84 CA 0930.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
*470 Charles S. McCowan, Jr., Neil D. Sweeney, Baton Rouge, for plaintiff-appellee William H. Daigle.
James R. Clary, Jr., Baton Rouge, for defendant-appellant Standard Coffee Services, Inc.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
William H. Daigle (plaintiff) filed suit for declaratory relief, damages and an injunction to prohibit arbitration against his former employer, Standard Coffee Service Company, a division of Wm. B. Reily & Company, Inc. (defendant).[1] Plaintiff also sought payment of $2,272.25 in commissions and $7,083.01 in pension benefits owed him by defendant. Defendant filed an answer and reconventional demand for injunctive relief against plaintiff for violation of the noncompetition clause of his employment contract and enforcement of a mandatory arbitration clause.
The trial court found that the arbitration requirement was a circumvention of LSA-R.S. 23:921 and denied defendant's motion for injunctive relief. Said ruling rendered plaintiff's request moot so his prayer for injunction was also denied.
Defendant appealed, alleging the trial court erred in determining (1) that insufficient advertising and training funds were expended by it to allow its noncompetition agreement to fall within the permitted exception in the statute, and (2) that substantial advertising and training funds must be spent in order to bring defendant outside the scope of the statute.

*471 FACTS
Plaintiff, who had over 20 years experience as a route salesman, worked for defendant from 1979 until December of 1983, when he voluntarily left to work for a competitor. When he was first employed by defendant, plaintiff went through a training program consisting of two weeks in New Orleans riding with three route salesmen on their regular routes, observing repair of small and large equipment, and touring coffee plants. The next two weeks he rode with his supervisor through his assigned route.
During those first four weeks, plaintiff was paid a training salary of $225.00 per week, which he was not expected to pay back when he began earning commissions. During the next five weeks, defendant continued making $225.00 weekly pre-commission salary payments but expected reimbursement for $1,125.00 from plaintiff's last commission check upon termination of his employment.
Defendant also maintained that it provided plaintiff with $500.00 worth of equipment, route reference and sales manuals, a demonstration allowance, advertising in the telephone book Yellow Pages ($792.00), promotional material ($140.00 for 12-15 weeks), and a decal for his company van ($474.00). Defendant's Auditing Manager, Marvin Ellis Hairgrove, Jr., testified that although the manuals were valued at $500.00, that figure was determined by dividing the total national $50,000.00 publication cost by 207 routes in the country. He admitted that the company had revised the same manual it had used for 12 years and that the company had only billed him $75.00 for his own Route Reference Manual, that the Yellow Page ad requested callers to dial the number of a local answering service which forwarded requests to two salesmen (including plaintiff), and that plaintiff's name did not appear in the ad. Plaintiff maintained that his training consisted of informal observation, that the contract required him to return the one manual he had received and that he had applied his name in "stick-on letters" to the decal himself.
After he had worked for defendant for three years, plaintiff was required to sign a second employment contract entitled "Route Sales Representative Employment Agreement." This contract differed from the original one signed by plaintiff in the wording of the noncompetition clause, the addition of the penalty for its violation and the arbitration requirement. Clause 10 of that agreement said, in pertinent part:
10. Covenant Not to Compete. As a part of the consideration for the execution of the Agreement and for the employment of Salesman by Standard, Salesman agrees that, for one year after the termination of this Agreement for any reason whatsoever, whether with or without cause and whether voluntary or involuntary, he will not directly or indirectly, for himself or on behalf of or in conjunction with any other person, persons, firm, joint venture, partnership, company corporation, organization or association solicit, divert, take away, or serve any customer of Standard with whom, during the twelve (12) months preceding the termination of the Agreement, he has either had dealings or contact or had personal knowledge of dealings or contact by other Standard salesmen or employees, nor will he for himself or on behalf of or in conjunction with any other person, persons, firm, joint venture, partnership, company, corporation, organization or association call upon or contact any such customer or customers of Standard for the purpose of soliciting, diverting, taking away, or serving any such customers, and/or selling to any such customers any coffee or related supplies or service, and/or disparaging Standard, its supplies, or its service in any way.
After plaintiff began his new job, defendant accused him of soliciting its customers in violation of that contract.
The trial court gave the following oral reasons for its judgment:

*472 The court has reviewed the record and the briefs of the parties and is of the opinion that the arbitration clause is unenforceable for the reason that it is an attempt by Standard to do indirectly what it cannot do directly. What it cannot do directly is enforce the no-compete clause. The court is of the opinion that the evidence does not bring it within the exception which Standard Coffee seeks to [utilize], that is, that it has expended enough funds in training and advertising to bring it outside the scope of article 921 of Title 23. The record does show that some funds were expended on behalf of Mr. Daigle by Standard in its training and some in advertising, which is individually attributable to him. However, neither are substantial and the skills provided to Mr. Daigle are not unique skills which he could not have easily acquired on his own and which he probably did not already have. The court is of the opinion that the exception in Section 921 [applies] to people who because of the efforts of their employer in training and advertising have made them highly specialized and very valuable. And I do not believe that a coffee salesman falls into that category.
Having said that you do not come within the exception of the prohibition of 921, the court is of the opinion that the section stands for the proposition that no court or no litigant may seek in court an injunction to prevent non-competition. By seeking to bring Mr. Daigle to arbitration and let the arbitrator decide the question of non-competition, you are in effect bringing in the power of the court to enforce a non-competition agreement.

LEGAL ISSUES
LSA-R.S. 23:921 incorporates long-standing judicial policy disfavoring noncompetition agreements between employees and employers. The act was amended in 1962 to provide an exception which would permit noncompetition contracts "in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in...." LSA-R.S. 23:921. Amended 1962 Acts, No. 104, §§ 1, 2.
In 1974 the Louisiana Supreme Court resolved the conflicts between two opposing lines of appellate decisions. One line, represented by Weight Watchers of Louisiana, Inc. v. Ryals, 289 So.2d 531 (La.App. 1st Cir.1973); aff'd, 302 So.2d 598 (La. 1974), and National Motor Club of Louisiana, Inc. v. Conque, 173 So.2d 238 (La. App. 3rd Cir. 1965), writ denied, 247 La. 875, 175 So.2d 110 (1965), upheld such agreements only where substantial funds were spent in special training or advertising of the employee himself as opposed to the employer's business generally. The other line, typified by Aetna Finance Company v. Adams, 170 So.2d 740 (La. App. 1st Cir.1964), writ refused, 247 La. 489, 172 So.2d 294 (1965), upheld such agreements where the employer went to any expense on employee training or advertising of even nominal connection of the employee with the business. In Orkin Exterminating Company v. Foti, the Louisiana Supreme Court expressly overruled Aetna and its progeny and upheld the Ryals and Conque rationale. Orkin, 302 So.2d 593, 596 (La.1974).
Stressing fundamental public policy principles of individual freedom in a free enterprise society and the disparity in bargaining power between employer and employee, the Supreme Court interpreted the amendment as providing only a limited exception against prohibited noncompetition agreements. Thus, employers must spend substantial sums for special training or extensive advertising of the employee as the person to go to for the employer's type of business to fall within the statutory exception. The Supreme Court refused to interpret "substantial expenses" as including normal administrative and supervisory expenses, any training primarily beneficial to the employer, situations where the employer received the benefit of its investment before termination of the employee, or access to training manuals and technical bulletins. Orkin, 302 So.2d at 596-598.
*473 The defendant in Orkin took no appeal from the trial court ruling enjoining him from soliciting or getting business from his former customers at Orkin. Therefore, neither the Supreme Court nor the Third Circuit ruled on that issue. However, both courts fully upheld the Conque case, and the Third Circuit expressly stated that it would have denied the limited injunction, and rendered the noncompetitive agreement totally unenforceable. Orkin Exterminating Company v. Foti, 287 So.2d 569, 575 (La.App. 3rd Cir.1974), aff'd, 302 So.2d at 596 (La.1974). Even where an employee breached his employment contract by soliciting his employer's customers while still working for it, the employer was not entitled to injunctive relief since that would result in de facto enforcement of the noncompetition agreement contrary to public policy in Louisiana. ADR v. Graves, 374 So.2d 699 (La.App. 1st Cir.1979); writ denied, 377 So.2d 843 (La.1979).
We cannot say that the trial court in this case was clearly wrong in determining legally that substantial sums must be spent in order for the agreement to fall within the statutory exception or factually that the employer did not spend substantial sums. We affirm at Standard's costs.
AFFIRMED.
NOTES
[1] Other defendants include the American Arbitration Association and James W. Bowers, arbitrator.