558 So.2d 250 (1990)
EDUCATION FOR LIVING SEMINARS, INC.
v.
Robert E. LEONE.
No. 89 CW 1129.
Court of Appeal of Louisiana, First Circuit.
January 3, 1990.
Rehearing Denied February 15, 1990.
Writ Denied April 20, 1990.
*251 Joseph R. Raggio, Edward Sutherland, Baton Rouge, for plaintiff-appellee Educ. for Living Seminars, Inc.
E.M. Quijano, Baton Rouge, for defendant-appellant Robert E. Leone.
Before COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Presented for our determination is the question of whether the trial court erred in granting the plaintiff a preliminary injunction.
Education for Living Seminars, Inc. (EFL) filed a petition for injunctive relief, naming Dr. Robert E. Leone as defendant. Plaintiff alleged it had an employment agreement with defendant (a psychologist) which contained a non-competition and non-solicitation clause. Plaintiff further alleged that when defendant's employment with EFL terminated, defendant formed a corporation and began offering seminars in direct competition with EFL, thereby violating the non-competition and non-solicitation clause in the employment agreement.
After a hearing the trial court granted plaintiff's request for a preliminary injunction as follows: defendant (or his agents) was enjoined from entering into competition with plaintiff; defendant (or his agents) was enjoined from contacting plaintiff's employees in an effort to induce them to leave plaintiff's employment; and defendant (or his agents) was enjoined from contacting the participants in plaintiff's seminar programs to induce them to participate in defendant's own programs.
The sole basis for the trial court's decision was that EFL had incurred expenses that fell "within the category referred to as substantial" under LSA-R.S. 23:921. The statute provides:
No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs *252 an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years.
Defendant filed a writ application with this court seeking review of the trial court's judgment granting the preliminary injunction. The writ was denied, with this court's noting the matter complained of was an appealable judgment. See Education for Living Seminars, Inc. v. Robert E. Leone, No. CW/89/1129 (La.App. 1st Cir. Aug. 10, 1989). Thereafter, defendant filed a writ application with the Supreme Court. The Supreme Court granted the writ stating: "This case falls within the exceptional category in which allegedly justice is being denied and irreparable injury is being done. Accordingly, the writ is granted and the case remanded to the court of appeal for immediate consideration and a decision on the merits with written reasons." See Education for Living Seminars, Inc. v. Robert E. Leone, 547 So.2d 379 (La.1989). This court ordered the record transcribed; the parties requested permission to file briefs.
In 1986, Charles and Veda Smith, operating as a sole proprietorship, began conducting seminars for the general public. In January of 1987 the Smiths formed a corporation (EFL) to operate the seminar production business. The seminars offered by the Smiths included the following: stage I, a three-day seminar; stage II, a five-day seminar; and stage III, a four- or five-day seminar, also known as "results program" or RP.[1] The seminars were led by a "trainer."
When the Smiths began the business in 1986, their trainer for the stage II seminars was Robert E. Leone, P.H.D. At that time Dr. Leone was also conducting similar seminars for two other companies. Apparently, he divided his time among them, doing seminars in several cities in Louisiana, Texas, and California. From July of 1986 through May of 1988, Dr. Leone worked with the Smiths (and then EFL) as an independent contractor.
On June 6, 1988, Dr. Leone signed an employment agreement, whereby he became an employee of EFL instead of an independent contractor for it. According to the contract Dr. Leone was to receive $72,000 per year in salary and one-third of the net profits of the corporation. In a separate document, Dr. Leone received one-third of the stock in EFL. The employment agreement contained a restrictive covenant or non-competition and non-solicitation clause[2] which provided as follows:
For and in consideration of Employer hiring Employee under the terms and provisions herein set out, Employee agrees that in the event that this employment contract is terminated for any reason whatsoever, or in the event Employee's employment relationship with Employer is terminated for any reason whatsoever, Employee will not for a period of five (5) years from the termination date of the employment with Employer within the geographical limits of the State of Louisiana, directly or indirectly own, manage, operate, join, control, be employed by, or participate in the ownership, management, operation or control of, or be connected in any manner with the business or type and character of business engaged in by Employer, or any of its subsidiary corporations, or any of its parent corporations, during this five (5) year period, including but not limited *253 to soliciting or suppler [sic] or former customer, client, underwriter, services or supplier of Employer, in an attempt to thereby procure business for Employee or divert business from Employer, except that this shall not prevent the ownership of stock in a corporation listed on a National Stock Exchange. It is recognized that the business of the Employer is extremely competitive in nature, and that the remedy at law for any breach of this covenant, not to compete, will be inadequate and that the Employer shall be entitled to injunctive relief and specific performance, as well as any and all other remedies to which Employer is entitled.
Within several months after the employment agreement was signed, the parties began having problems working together. In April of 1989, EFL terminated Dr. Leone's employment. Dr. Leone then formed Life Designs, Inc., a corporation which offered seminars that were essentially the same as those offered by EFL. At this point EFL filed suit and was granted relief enjoining defendant (or his agents) from competing with EFL or soliciting EFL's employees and seminar participants.
Defendant contends the trial court erred in granting the preliminary injunction. We agree.
In order to obtain a preliminary injunction, the moving party must show that the injury, loss or damage he will suffer may be irreparable if the court fails to issue the injunction. The mover must make out a prima facie showing that he will prevail on the merits of the case, thus showing that he is entitled to the injunctive relief. LSA-C.C.P. art. 3601; Lamb v. Quality Inspection Serv., Inc., 398 So.2d 643 (La.App. 3d Cir.1981). Consequently, if the prohibition of LSA-R.S. 23:921 applies despite the evidence presented by the mover, the mover will not be entitled to prevail on the merits and is barred from injunctive relief.[3]
In Louisiana, non-competition agreements required by employers of employees are disfavored. However, LSA-R.S. 23:921 provides two exceptions which permit non-competition contracts in cases where the employer incurs "expense in the training of the employee" or "expense in the advertisement of the business that the employer is engaged in." In Orkin Exterminating Company v. Foti, 302 So.2d 593 (La.1974), the Supreme Court interpreted the above statutory language as providing only a limited exception. The court stated as follows:
If an employer extensively advertises a particular employee as the man to go to for the employer's type of services, it is not unfair to protect the employer's investment in this particularized asset by authorizing a limited non-competition agreement to prevent the advertised employee from misusing it. If an employer spends a substantial sum affording special training to an employee, it may not be unfair to protect the employer by authorizing a limited non-competition agreement to prevent the employee from using this specialized training for the benefit of another in competition with his former employer. [Emphasis added.]
302 So.2d at 597.
Thus, in order to fall within the statutory exception, employers must spend substantial sums for special training or extensive advertising of the employee as the person to go to for the employer's type of business. The Supreme Court refused to interpret "substantial expenses" as including normal administrative and supervisory expenses, access to training manuals and technical bulletins, or any training primarily beneficial to the employer. Nor was the exception allowed in situations where the *254 employer received the benefit of its investment before termination of the employee. Orkin, supra; see also Daigle v. Standard Coffee Service Co., 479 So.2d 469 (La.App. 1st Cir.1985).
Our jurisprudence has found no distinction between non-competition and non-solicitation agreements; LSA-R.S. 23:921 is applicable to both. Thus, a clause which prohibits former employees from soliciting their former employer's customers is unenforceable unless the statutory provision applies and the employer shows expenditures of substantial sums in the training of the employee or in advertising the employee's connection with his business. Bugs Burger Bug Killers, Inc. v. Keiser, 463 So.2d 45 (La.App. 5th Cir.1985). See also ADR v. Graves, 374 So.2d 699 (La.App. 1st Cir. 1979), writ denied, 377 So.2d 843 (La.1979).
The ultimate factual issue to be determined in the present case is whether all or part of the money spent by EFL on Dr. Leone constitutes an "expense in the training of the employee" such that the non-competition and non-solicitation clause in the employment contract should be upheld.
According to the record, EFL's main expense on behalf of Dr. Leone was approximately $12,000. Of this amount, $7,900 represented the first year's tuition for an "Ontological Design Course" (ODC), a three-year course offered by a California company. The remainder of the money was for Dr. Leone's computer and travel expenses. Participants in the course attended three weekend seminars per year and did the remainder of the assigned work (approximately 20 lessons) as a correspondence course on a computer. Dr. Leone attended two of the three weekend seminars and completed approximately three-fourths of the lesson assignments. Mr. Smith testified he wanted Dr. Leone to enroll in the ODC because he wanted his business, EFL, to begin to move in the same philosophical direction as ODC. However, Mr. Smith admitted that it was not the purpose of ODC to teach Dr. Leone to lead seminars, but rather "to improve the leading of seminars."
It is clear from the record that Dr. Leone had the ability to lead stage II seminars before he became associated with the Smiths or EFL, and he learned to lead stage III seminars through on-the-job training. In addition, we note Dr. Leone's employment contract states he "has certain experience and possesses certain skills" in the business known as EFL and "he is qualified to act as Trainer." Considering all of the above, it is apparent that the $7,900 fee for ODC, while substantial, was not "special training" required in order to enable Dr. Leone to lead seminars for EFL.
EFL contends the restrictive covenant should be upheld because it was "an incident of and was ancillary to" the gift of stock to Dr. Leone. In support of its argument, EFL cites Gold & Suckle, Inc. v. Suckle, 335 So.2d 713 (La.App. 2d Cir. 1976), writ denied, 338 So.2d 700 (La.1976). ELF's reliance on Suckle is misplaced. In Suckle the plaintiff purchased a corporation from defendants and then employed defendants to work for it. The court found the restrictive covenant valid because it was not a part of the employment contract per se but was part of the sale of the business. In the instant case, one-third of EFL's stock was given to Dr. Leone, apparently as an inducement to him to continue his association with EFL. EFL's contention, in brief, that the stock was consideration for the restrictive covenants is simply not supported by the record.
For the above reasons we find the money spent by EFL on Dr. Leone was not for "special training"; therefore the expenditure does not trigger the exception to restrictive covenants found in LSA-R.S. 23:921. Accordingly, the non-competition and non-solicitation clause in the employment agreement between Dr. Leone and EFL is null and void as against public policy. The trial court erred in granting the preliminary injunction on the basis of the clause. Thus, we grant the writ and reverse the judgment of the trial court. Costs of the appeal are to be paid by plaintiff-appellee.
REVERSED.
NOTES
[1] The evidence shows that the concept for the seminars was not original with the Smiths. In fact, the Smiths began business as a "franchise" of a Texas-based seminar production company. Other seminar formats were structured to include "Act I," "Act II," and "Act III."
[2] In granting a preliminary injunction in favor of EFL, the trial court reformed the contract to conform to the two-year limitation of LSA-R.S. 23:921.
[3] On appeal the parties have focused their arguments on the validity of the non-competition agreement. However, we note that the allegations of plaintiff's petition are broader than that. Despite the allegations, plaintiff's evidence did not amount to a prima facie showing that plaintiff would prevail on the merits under any other theory of law. On the contrary, the evidence showed that the list of EFL's seminar participants had been publicly disseminated by EFL and that several trainers had left EFL for reasons other than being lured away by the defendant.