302 So.2d 593 (1974)
ORKIN EXTERMINATING COMPANY, Plaintiff-Appellant-Relator,
v.
James T. FOTI, Defendant-Appellee-Respondent.
No. 54475.
Supreme Court of Louisiana.
October 28, 1974.
*595 James T. Guglielmo, Edward B. Dubuisson, Dubuisson, Brinkhaus, Guglielmo & Dauzat, Opelousas, for plaintiff-applicant.
Earl B. Taylor, Taylor & Trosclair, Opelousas, for defendant-respondent.
TATE, Justice.
Orkin, the employer, sues its former employee Foti to enjoin him for working for two years in the pest control field in approximately the western half of Louisiana. The cause of action is based upon a clause in the employment contract by which Foti had agreed not to compete for two years in such area after his employment with Orkin was terminated. The employer complains of the grant of only a limited injunction[1], affirmed by the court of appeal, 287 So.2d 569 (La.App. 3d Cir. 1973).
We granted certiorari, 292 So.2d 241 (La.1974), in order to resolve a conflict in the intermediate court decisions interpreting the legality of agreements exacted by employers from their employees not to compete with them after the termination of an employee relationship.

1.
More specifically at issue is the application of La.R.S. 23:921 as amended in 1962.
This statute as originally enacted in 1934 and as incorporated into the 1950 Revised Statutes provides: "No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court".
The statute was amended by Act 104 of 1962 to add as a proviso a limited exception to this stringent blanket prohibition of non-competition agreements: "where the employer incurs an expense in the training of an employee or incurs an expense in the advertisement of the business that the employer is engaged in", then a non-competition agreement was permitted that, at the termination of employment, the "employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years."[2]
The conflict in the intermediate courts developed as to what extent the proviso had modified the original basic policy disfavoring non-competition agreements. See Comment, Agreements Not to Compete, 33 La.L.Rev. 94, 103-06 (1972).
One line of decisions holds that, in view of the basic policy of the statute to which the 1962 amendment was a proviso, the terms of the amendment imported sums not usually or customarily expended in the normal course of employmentthat the amendment contemplated validating a non-competition *596 agreement only where substantial funds were spent in special training or in special advertisement of the employee himself (rather than generally of the business).
The other line of cases holds that any expense incurred in training an employee, even normal supervisory assistance in breaking him in, and any expense incurred in advertising the employee's connection with the business, however nominal, validated an otherwise-prohibited non-competition agreement.
The leading case in the first line of decisions is National Motor Club of La., Inc. v. Conque, 173 So.2d 238 (La.App. 3d Cir. 1965), certiorari denied, 247 La. 875, 175 So.2d 110 (1965). Other decisions of similar import are: Weight Watchers of Louisiana, Inc. v. Ryals, 289 So.2d 531 (La. App. 1st Cir. 1973), certiorari granted, 292 So.2d 242 (La.1974) (argued at same time as present case and decided this date, La. App., 302 So.2d 598); Peltier v. Hebert, 245 So.2d 511 (La.App. 3d Cir. 1971).
The leading case in the latter line of decisions is Aetna Finance Co. v. Adams, 170 So.2d 740 (La.App. 1st Cir. 1964), certiorari denied, 247 La. 489, 172 So.2d 294 (1965). Other decisions of similar import are: National School Studios, Inc. v. Barrios, 236 So.2d 309 (La.App. 4th Cir. 1970); World Wide Health Studios, Inc. v. Desmond, 222 So.2d 517 (La.App. 2d Cir. 1969). Cf. also Louisiana Office Systems, Inc. v. Boudreaux, 298 So.2d 341 (La.App. 3d Cir. 1974).
We resolve the conflict by approving National Motor Club v. Conque and its progeny. Aetna Finance Co. v. Adams and those decisions which follow its rationale or reach its result are overruled.

2.
The basic public policy of this state disfavors non-competition agreement exacted of employees. The basic provision of La.R.S. 23:921 (see above) is a strict prohibition against any employer requiring such an agreement of his employee. Even before the 1934 statutory prohibition, the Louisiana courts had consistently held such agreements to be unenforceable. Cloverland Dairy Products Co. v. Grace, 180 La. 694, 157 So. 393 (1934); Blanchard v. Haber, 166 La. 1014, 118 So. 117 (1928). See: Comment, 33 La.L.Rev. 94 (1972); Note, 27 Tul.L.Rev. 364 (1953). In the absence of an enforceable contract to other effect, an employee has the absolute right to enter the employment of another and actively compete with his former employer. Jones v. Ernst & Ernst, 172 La. 406, 134 So. 375 (1931).
As noted in Conque, 173 So.2d 241, the essential basis of these decisions "is the right of individual freedom and of individuals to better themselves in our free-enterprise society, where liberty of the individual is guaranteed. A strong public policy reason likewise for holding unenforceable an agreement exacted by an employer of an employee not to compete after the latter leaves his employment, is the disparity in bargaining power, under which an employee, fearful of losing his means of livelihood, cannot readily refuse to sign an agreement which, if enforceable, amounts to his contracting away his liberty to earn his livelihood in the field of his experience except by continuing in the employment of his present employer."
These fundamental background principles must be borne in mind in interpreting the intent of the 1962 amendment. This provides only a limited exception to the stringent prohibition of the statute against such non-competition agreements, and to the strong and long-established public policy of this state to such effect.
If the 1962 amendment is construed as by the Aetna v. Adams line of decisions, then any expense incurred by an employer in training or advertisement entitles him to enforcement of a two-year restrictive covenant. If, however, this is the proper meaning of the amendment, then virtually *597 any employer can qualify for the exception. This is contrary to the basic public policy incorporated by the statute. By such a construction, the 1962 amendment, which in terms merely added a proviso to the basic enactment, would in actuality have repealed it.
The purpose of the limited exception permitted by the 1962 amendments could not have been to repeal the fundamental purpose of the prohibition. The basic public policy incorporated was to forbid an employer from effectively tying an employee to his present employment. Such a non-competition agreement may effectively prevent an employee from leaving his present employment in order to earn a better living in the occupation in which experienced and in the area of his livelihood.
In view of the fundamental policy of the basic statute, the apparent purpose of the 1962 amendment, as stated in Conque, "is to protect an employer only where he has invested substantial sums in special training of the employee or in advertising the employee's connection with his business." 173 So.2d 241.
If an employer extensively advertises a particular employee as the man to go to for the employer's type of services, it is not unfair to protect the employer's investment in this particularized asset by authorizing a limited non-competition agreement to prevent the advertised employee from misusing it. If an employer spends a substantial sum affording special training to an employee, it may not be unfair to protect the employer by authorizing a limited non-competition agreement to prevent the employee from using this specialized training for the benefit of another in competition with his former employer.
However, as the Conque line of cases holds, normal expenses of administration and supervisionsuch as employee sales and training meetings, the time spent breaking in a new employee, training courses in the administrative needs of the employer itselfcannot be considered the sort of "training" expense intended to justify the heavily disfavored non-competition agreement. Almost any employer could so tie his employees to their present employment by exacting a non-competition agreement. As Conque notes, 173 So.2d 241: "What the legislators must have intended, it seems to us (since they did not repeal the basic prohibition against such contracts as void as against the public policy of the state), was to protect the investment of those employers who afford special training of a substantial nature to their employees, and to encourage them to do so."

3.
Foti was employed almost five years by Orkin. He was first employed in Alexandria in 1968 at $500 per month. Non-competition agreements were exacted of him in 1970, when he became manager of the New Iberia office, in 1971 when he became branch manager at Monroe, then again in 1972, when he was transferred to the Louisiana district office in Alexandria at a base salary of $750 per month.
Included in the three pages of the last contract, here sought to be enforced, was an agreement not to engage in the pest control business, for two years after his employment terminated, in the cities of Alexandria, Crowley, Monroe, Lafayette, Lake Charles, Natchitoches, New Iberia, Shreveport, or Ruston, or anywhere within a radius of fifty miles of the official geographical boundaries of each of these Louisiana cities.
This injunctive proceeding was brought when Foti left Orkin's employ and then started his own pest control business in Opelousas. Orkin claims that its non-competition agreement is validated by sums spent in training Foti as a pest control worker and as a branch manager. (It also claims that its general expenses of advertising to improve its business are sufficient to validate the contract.)
*598 We agree with the court of appeal that the one-day service training schools in 1970, 1971, and 1972, and the supervisor's leadership conference in August, 1972 represent a type of normal administrative expense not available to validate non-competition agreements; they are not special training expenditures of a substantial nature. Likewise (even aside from the fact the expenditure occurred prior to the 1972 agreement here sought to be enforced), the $261.50 expense furnished the employee for attending the Orkin's Manager Training School in Atlanta, Georgia, in 1970 cannot justify enjoining the employee from working for himself or another in 1973 and 1974the employer had long received the benefit of its investment through the employee's two years of managerial service afterwards; the amount is insubstantial in relation to the period of service;[3] and the training was primarily to benefit Orkin rather than to add a marketable talent to the employee.
Likewise, Foti's on-the-job training through his experience, through the supervisory assistance initially received by him, and through his access to Orkin training manuals and technical bulletins, constitute usual and ordinary expenses of employee-utilization. They are not expenses for specialized training of the nature that could validate a non-competition agreement.
As our brothers of the intermediate court correctly observed: "* * * the basic and necessary knowledge in the business of pest eradications and control was acquired by the defendant, Foti, by everyday exposure to the business during the five years he was employed by the plaintiff. We cannot envision a rule whereby a man who has learned a trade by his own ability and hard work `on the job' would be restricted by the courts from trying to better himself by starting his own business. This would be contrary to our free-enterprise system."

Decree
Accordingly, the judgment of the previous courts is affirmed, at the cost of the defendant-appellant-relator.
Affirmed.
SUMMERS, J., concurs in the result.
NOTES
[1] The defendant Foti was enjoined from soliciting or getting business from customers of Orkin formerly contacted or serviced by him as an employee of Orkin. No appeal was taken from this ruling.
[2] The full language added to La.R.S. 23:921 by the 1962 act is: "provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged in over the same route or in the same territory for a period of two years."
[3] Thus, specialized training involving an actual cash expenditure of $400 might be regarded as the investment of a substantial sum if the employee quit soon after receiving it. However, if the termination of the employee's services occurs two or three years later, after the employer had, so to speak, amortized its investment, then the amount so spent can be regarded as insubstantial insofar as sustaining an injunction to keep the employee from working in the field of his experience for years, even though in the interval insubstantial routine training expenditures have been incurred. But see Louisiana Office Systems, Inc. v. Boudreaux, 298 So.2d 341 (La.App.3d Cir. 1974), certiorari granted, 302 So.2d 37 (La.1974).