563 So.2d 898 (1990)
DIESEL DRIVING ACADEMY, INC., Plaintiff-Appellant,
v.
L.C. FERRIER, Defendant-Appellee.
Nos. 21346-CA, 21594-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
On Rehearing July 23, 1990.
*899 Smitherman, Lunn, Chastain & Hill by Merritt B. Chastain, Jr., Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Jerald R. Harper, Shreveport, for defendant-appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
MARVIN, Judge.
In this action to enforce an agreement not to compete against its former employee, Ferrier, the former employer, Diesel Driving Academy, Inc. (DDAI), appeals a judgment that awarded Ferrier CCP Art. 863 sanctions totaling $11,352 and $6,500 damages for wrongful issuance of a temporary restraining order.
The trial court found DDAI's petition to be without any reasonable support, factually and legally, and to have been instituted for an improper purpose. DDAI's law firm was assessed with $1,000 of the total sanction.
*900 DDAI seeks to reverse or reduce the TRO damage award. DDAI and its law firm contend that the Art. 863 sanctions are unwarranted or excessive, and that, in any event, only the lawyer who signed DDAI's pleadings, and not the law firm, is legally subject to the sanction. Ferrier concedes, and we agree, that sanctions may be imposed only on the attorney who signed the petition and not on the law firm that employed him when he signed it. Pavelic & LeFlore v. Marvel Entertainment Group, ___ U.S. ___, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).
In answer to the appeal, Ferrier seeks to increase the sanction to the amount of the attorney fee he incurred in the trial court and an additional amount for the attorney fee he incurs because of this appeal, contending that we may order the increase either as an Art. 863 sanction or as damages for frivolous appeal under CCP Art. 2164 and URCA Rule 2-19.
We shall amend the $1,000 sanction to be only on the attorney and not the law firm. We otherwise affirm, but remand, directing the trial court to determine what additional "reasonable expenses" Ferrier may be entitled to because of the appeal.

PREFACE
The record supports the damage award for dissolving the TRO. That award ($6,500) and the sanction ($11,352) are warranted and are not abusively high or low.
Because this is our first review of an Art. 863 sanction, we do not consider DDAI's appeal to be frivolous. We remand because Ferrier is legally entitled to introduce evidence in the trial court to claim reasonable attorney fees on appeal as part of the "reasonable expenses incurred because of the filing of the pleading" under Art. 863. See and compare Muthig v. Brant Point Nantucket, Inc., 838 F.2d 600 (1st Cir.1988), and Allen v. Smith, 390 So.2d 1300 (La.1980).

FACTS
DDAI has operated one or more truck driving schools in the Shreveport area for 17 years. With 30 years total experience as a truck driver, dock foreman, freight salesman and terminal manager, Ferrier was hired by DDAI as a driving instructor in July 1987. He was promoted to placement director in January 1988, to assistant director of training and placement in February 1988, to director of training and placement in March 1988, and to executive director of training and placement in August 1988.
The employment contract in dispute, one of several Ferrier signed, was executed when Ferrier became executive director of training and placement in August 1988. Ferrier agreed not to compete with DDAI within a 500-mile radius for two years after his employment ended, and not to disseminate or disclose to others any materials or information relating to DDAI's business.
Ferrier was fired on January 16, 1989, after refusing DDAI's request to resign. Ferrier apparently had received DDAI mail at his home. He testified that one carrier that had hired a DDAI student mailed him a copy of a placement verification notice at his request after DDAI's president failed to receive the notice that was mailed to DDAI's office address. Ferrier was paid a commission on verified student placements. DDAI's vice-president testified that when Ferrier was asked to resign he claimed the mail he received at home was from DDAI's Jacksonville, Arkansas, school.
On January 23, 1989, one week after Ferrier was fired, he began working for a DDAI competitor, Coastal Training Institute of Slidell (CTI). Ferrier was one of several CTI employees being considered to operate a CTI driving school planned for Bossier City.
DDAI sued Ferrier on February 22, 1989, alleging that Ferrier had violated the employment contract by going to work for CTI and by "providing CTI with proprietary information and trade secrets belonging to DDAI, including but not limited to lesson plans, mailing lists, training materials and customer lists." DDAI also alleged that Ferrier "actively pursued the interests of CTI while in the employment of DDAI *901 ... [and] encourag[ed] DDAI employees to leave its employ and work for CTI."
In an exhibit attached to the petition, DDAI claimed in detail to have spent over $150,000 to train Ferrier for several of the positions he held at DDAI. Also attached to the petition was the affidavit of DDAI's president, Philip Johnson, who stated that he was "personally aware" of Ferrier's alleged misconduct.
On DDAI's petition and supporting documents, the trial court issued a TRO enjoining Ferrier from working for, and divulging proprietary information of DDAI to, any competitor, and from interfering with the employment relationship between DDAI and its employees. Ferrier filed a motion to dissolve the TRO, which the trial court granted on March 8, after a hearing, only because DDAI's vice-president testified that his company could be adequately compensated for its damages by a money judgment.
The hearing on DDAI's rule for a preliminary injunction was held on March 23 and April 6, 1989. On March 23, Ferrier filed his motion for CCP Art. 863 sanctions. After DDAI concluded the presentation of its evidence on April 6, the court granted Ferrier's motion to dismiss DDAI's rule for a preliminary injunction. The court found that DDAI failed to prove the kind of substantial training expense that is required for enforcement of an agreement not to compete.
Ferrier's motions for sanctions and for damages for dissolution of the TRO were heard on June 29-30, 1989. For reasons summarized herein, the trial court found that each of the three grounds for imposition of sanctions under Art. 863 had been shown: DDAI's petition was not well-grounded either in fact or in law and was filed for the improper purpose of thwarting CTI's attempt to compete with DDAI in the Shreveport area.
Ferrier showed he had incurred over $28,000 in costs and attorney fees defending the action, about half of which were related to dissolution of the TRO. The court awarded Ferrier $6,500 in damages for wrongful issuance of the TRO.
The appeal of DDAI and of the law firm were consolidated with DDAI's earlier appeal of the judgment denying the preliminary injunction. In its appellate brief DDAI effectively abandons other assignments of error and seeks review only of the award of damages and sanctions.

TRO DAMAGES
DDAI argues that damages should not have been awarded for dissolution of the TRO because the TRO expired by its own terms before the court dissolved it. The record does not support this contention.
The TRO issued on February 22, 1989, and was extended within the initial ten-day effective period, on March 1, 1989, until March 8, the date set for the preliminary injunction hearing. Although the presentation of evidence on the preliminary injunction was not concluded until April, the court dissolved the TRO on March 8, after DDAI's vice-president testified that the harm to DDAI was compensable in money. The TRO did not expire by its own terms. The trial court did not err in assessing damages for dissolution of the TRO. CCP Art. 3608; Cook v. Ed Francis Chevrolet, Inc., 365 So.2d 1178 (La.App. 3d Cir.1978).
We cannot agree with DDAI's contention that attorney fees are not recoverable because Ferrier testified his counsel was being paid by CTI, but with the understanding between CTI and Ferrier that Ferrier would reimburse CTI out of his year-end bonuses. Both Ferrier and his attorney testified that Ferrier, and not CTI, was primarily responsible for the attorney fee.
The $6,500 damage award is slightly less than half of the fees and expenses Ferrier incurred to have the TRO dissolved. The award is not abusively high or low. The charges include time spent by several attorneys on legal research, conferences, and on five depositions taken before the hearing to dissolve the TRO. We find no abuse of discretion in the award and do not disturb it. Cook v. Ed Francis Chevrolet, Inc., supra.

*902 SANCTIONS
CCP Art. 863, as amended by Act 442 of 1988, effective January 1, 1989, provides in part:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
Art. 863 is derived from Rule 11, FRCP. The federal decisions afford us guidance for our interpretation and application. Allen v. Smith, supra; Giroir v. South La. Medical Ctr., 475 So.2d 1040 (La.1985).

THE REQUIRED INQUIRY
Rule 11 and Art. 863 require the attorney or litigant who signs a pleading to make an objectively reasonable inquiry into the facts and the law. Subjective good faith does not satisfy the duty of reasonable inquiry. Thomas v. Capital Sec. Services, Inc., 836 F.2d 866, 873-874 (5th Cir. 1988).
Among the factors to be considered in determining whether a reasonable factual inquiry has been made are
the time available to the signer for investigation;
the extent of the attorney's reliance on his client for the factual support for the document;
the feasibility of a prefiling investigation;
whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
the complexity of the factual and legal issues; and
the extent to which development of the factual circumstances underlying the claim requires discovery.
Thomas, supra, 836 F.2d at 875.
Factors for determining whether reasonable legal inquiry was made include the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the pro se status of a litigant; and the complexity of the legal and factual issues raised. Thomas, supra, 836 F.2d at 875-876.
The cost of a foreseeable response by opposing parties is also relevant in determining the standard of reasonable inquiry. Unioil, Inc. v. E.F. Hutton & Co., Inc., 809 F.2d 548 (9th Cir.1986), U.S. cert. denied.
Rule 11 [and CCP Art. 863]
seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law.... The Rule is not breached if after reasonable legal research and adequate factual investigation, a party and counsel in good faith decide to challenge existing law.... [S]anctions ... do not automatically or usually follow an adverse judgment or ruling. Substantially more is required. *903 Gaiardo v. Ethyl Corp., 835 F.2d 479, 483-484 (3d Cir.1987). Emphasis added; citations omitted.
The "abuse of discretion" standard of review applies to the trial court's finding that a violation has occurred and to its determination of the amount and type of sanction imposed. Thomas, supra, 836 F.2d at 871-872.

APPLICATION OF ART. 863
When Ferrier signed the August 1988 employment contract, agreements not to compete were statutorily prohibited unless the employer incurred substantial expense to train the employee or advertise his connection with the business. LRS 23:921, before its 1989 amendment; Orkin Exterminating Company v. Foti, 302 So.2d 593 (La.1974). On-the-job training and normal expenses of administration and supervision are not considered "the sort of `training' expense intended to justify the heavily disfavored non-competition agreement." Foti, supra, 302 So.2d at 597.
DDAI's petition includes an exhibit itemizing the $150,000 it claimed to have spent on Ferrier's training and advertisements. The major training expenses claimed, totaling $147,000, are:

$12,000 Training as driving instructor
 57,000 Training as director of training
 and placement
 57,000 Training as executive director of
 training and placement
 6,000 Training on student financial aid
 3,000 Training on purchasing training
 equipment
 12,000 Weekly management meetings

Smaller amounts are claimed as training expenses for other office meetings and for two one-day seminars Ferrier attended. Ferrier earned about $40,000 in salary and commissions in 1988.
DDAI claimed about $2,500 in advertising expenses for one newspaper announcement, mailouts announcing Ferrier's promotions, and "meals, entertainment, golf tournaments, etc." to introduce Ferrier to recruiters and other "key people."
Most of DDAI's claimed $147,000 in training expenses represented time that DDAI's president and Ferrier's supervisor, Philip Johnson, said he spent with Ferrier for "on-the-job" training. For example, Johnson claimed he spent a total of 12 weeks, or about three months, of his time away from his regular duties to train Ferrier as director of training and placement, a position Ferrier held for only five months before being promoted to executive director. Johnson earned $4,800 per week in salary and bonuses. DDAI multiplied Johnson's weekly earnings by 12 weeks to claim $57,000 for training Ferrier for this position. Johnson also said he spent 12 weeks training Ferrier as executive director of training and placement, adding another $57,000 as training expenses. Johnson received his regular pay, without any additional compensation, for the time he said he spent training Ferrier.
Ferrier was not responsible for matters of student financial aid until he became executive director of training and placement in August 1988. Johnson said that although he spent some time with Ferrier on financial aid training, most of that training was done by three other DDAI employees. Only one of the three, the financial aid director, testified. She said she spent two hours away from her regular duties to train Ferrier in financial aid. She could not answer or explain how DDAI calculated the $6,000 financial aid training expense.
Most of the training expenses claimed by DDAI represent on-the-job training of Ferrier through supervisory assistance and through his access to DDAI training materials. These same types of training expenses were claimed by the employer in Orkin Exterminating Company v. Foti, supra. They were found to be "usual and ordinary expenses of employee-utilization... [and] not expenses for specialized training of the nature that could validate a non-competition agreement." 302 So.2d at 598. See also Chalmers Corp. v. Carnell, 479 So.2d 990 (La.App. 3d Cir.1985), where the employee's attendance at company meetings and his on-the-job training were found legally insufficient to support enforcement of an agreement not to compete.
*904 After DDAI put on its evidence at the preliminary injunction hearing, its counsel conceded that DDAI's claimed expenses to advertise Ferrier's connection with the company "don't reach a substantial amount." Because Johnson had testified that there were no "outside" formal training programs to which Ferrier could be sent, DDAI argued that the training Johnson gave Ferrier was "specialized" and the cost was "substantial."
In its argument to the trial court, DDAI's counsel used "the most conservative possible approach" and estimated that Johnson spent 130 hours training Ferrier as executive director of training and placement, a little over three weeks, as compared to the original claim of 12 weeks. Using the rate of $50 per hour, "the rate that [DDAI] charges out [for] specialized training," according to its counsel, instead of the original $120 per hour as Johnson's pay rate, the value of Johnson's time was estimated as $6,500, as compared to the original claim of $57,000. Because Ferrier held the position for five months, DDAI claimed it spent $1,300 per month on training and argued this was "substantial" under the Foti analysis.
At the sanction hearing, the trial court stated:
DDAI failed woefully in its case on the training expenses.... And we are unable to speculate how much pressure DDAI placed on the lawyer or how much advice the lawyer gave to the client in saying, "Yes, you have a good case." But we do believe that counsel for DDAI placed too much emphasis on what the client wanted to do. For example, and only as an example, the Court believes that counsel should have questioned the expenditure of $150,909.50 in training, which is the figure shown on Exhibit C [attached to the petition], and viewed that in light of the jurisprudence in this area of the law.
We find no abuse of discretion in the trial court's implicit finding that DDAI and its counsel did not make an objectively reasonable inquiry into the nature and amounts of the claimed training expenses, information that was available from DDAI, before alleging that DDAI had incurred "great expense" to train Ferrier.
Even should we agree that the claimed expenses were substantial in amount, most of the expenses were for the type of training that consistently has been found legally insufficient to support enforcement of an agreement not to compete. Considering that the expenses totaled almost four times as much as Ferrier's annual earnings, DDAI's counsel should have made further inquiry into the factual basis for the claimed expenses before using them to have Ferrier restrained and enjoined from working for CTI, albeit only temporarily.
The trial court also found DDAI's conclusion that Ferrier "stole" DDAI's lesson plans was "based on an assumption, not upon a fact." The record clearly supports this finding.
Ferrier shared an office with James Ryan, who worked under Ferrier at DDAI and, later, at CTI. Ryan was fired from DDAI on February 10, 1989, more than three weeks after Ferrier was fired. The set of lesson plans that Ferrier and Ryan shared was found missing after Ryan was fired. Ferrier testified that when he was fired, DDAI's co-owners, Barry and Bruce Busada, stood at his desk and watched him clean it out. Ferrier said Bruce Busada walked with him to his car, where he gave Bruce a lesson plan book and a driver's manual that had been in his car. Barry remained in the office. Bruce did not testify at the hearing.
Barry Busada testified that the looseleaf contents of the lesson plan book in the office Ryan had shared with Ferrier were found missing when Ryan had been fired and was cleaning out his desk. Ryan then told Barry Busada he did not know where the lesson plans were. Ryan testified, however, that he found the lesson plans at his home the next day, a Saturday, and that he left on an out-of-town trip on Sunday. On Monday, Ryan called Philip Johnson at DDAI and explained when and where he had found the lesson plans and that he would return them to DDAI when he returned *905 to Shreveport on Sunday, February 19, 1989, which he did.
When DDAI filed its action on February 22, 1989, supported by Johnson's affidavit, the missing lesson plans had been returned to DDAI. Nevertheless, DDAI's petition stated:
Upon termination of Ferrier, complete lesson plans ... were found to be missing and are alleged on information and belief to be in the possession of Ferrier.
Johnson stated in the affidavit that he was "personally aware ... [that] Ferrier has maintained in his possession secret materials belonging to DDAI developed over 17 years of experience that allowed DDAI to establish one of the few certified training programs in the country and which could give competitors an unfair advantage."
At the hearing, Johnson gave this answer when asked for the facts on which his personal awareness was based:
[Ferrier] was employed by CTI. They could probably use [the lesson plans]. They'd probably be a good tool for them. They were missing. It's my belief that he had them, yes.
Barry Busada admitted that he could have contacted Ferrier to ask if he had the lesson plans, but did not. He also admitted that no one told him Ferrier had them. He simply assumed Ferrier had them because Ferrier had shared an office with Ryan, and Ryan initially said he did not know where the lesson plans were. Busada acknowledged that Ryan returned the lesson plans to DDAI, although he believed this was done after the suit against Ferrier was filed. Busada said he thought it was "pretty obvious they were all copied." These questions and answers followed:
Do you know that anything has been copied?
Well, just why in the world would you take something out of a binder if you weren't going to copy it. What other reason is there for that?
So you speculated that it had been copied?
Again, I think that is pretty obvious.
And you speculated that Mr. Ferrier is the person who copied it?
I certainly think he had a hand in it. Sure do.
DDAI's counsel has argued that the duty of reasonable factual inquiry should be lessened in suits for injunctive relief, which require immediate action on the client's behalf. The argument is not persuasive in these specific circumstances. Busada was asked on cross-examination, "Were there any reasons why a more thorough [factual] examination could not have been performed in this instance prior to filing this suit?" He answered, "Just, you know, [I] didn't think it was necessary. The facts seemed pretty obvious at the time."
Ferrier correctly argues that the cost of his foreseeable response to an injunction that prevented him from working is relevant to DDAI's duty of reasonable inquiry. Unioil, Inc. v. E. F. Hutton & Co., Inc., supra.
The trial court described this as
an almost classic case of an unnecessary complaint.... DDAI's case against Ferrier is not grounded in fact but is grounded in speculation, inference, assumption and supposition. In reality, L. C. Ferrier is a pawn. [Ferrier's counsel] argued and the Court can reason inferentially from the argument of [DDAI's counsel] that what this case is about is DDAI trying to stop CTI from competing in this area and stealing its employees.
DDAI's allegations that Ferrier solicited its employees to work for CTI were refuted by the employees, one of whom still worked for DDAI after declining a job offer from another CTI employee. On this issue, as with the lesson plans and the training expenses, DDAI made allegations that it could not support factually, even by its own witnesses.
This comment aptly describes DDAI's posture:
It is human nature to crave vindication of a passionately held position even if the position lacks an objectively reasonable basis in the law. But the amended Rule 11 makes clear that he who seeks vindication in such circumstances and fails to *906 get it must pay his opponent's reasonable attorney's fees.
See Dreis & Krump Mfg. v. Intern. Ass'n of Machinists, 802 F.2d 247, at 255 (7th Cir.1986).
We find no abuse of discretion in the trial court's finding of violations or in its imposition of a portion of the sanctions on DDAI's counsel. We shall amend the judgment to substitute the name of the individual attorney who signed DDAI's petition for the name of the law firm in the counsel sanctions.
Art. 863, like Rule 11, requires an attorney to sign a pleading in his "individual name." Sanctions may be imposed on "the person who signed it" under Rule 11, and on "the person who made the certification" under Art. 863.
Rule 11 has been interpreted as imposing a personal, nondelegable duty on the signing attorney to satisfy himself, by application of his own judgment, that the pleading is factually and legally responsible. Because the duty belongs to the individual attorney, only he, and not his law firm, may be sanctioned for violating the duty. Pavelic & LeFlore v. Marvel Entertainment Group, supra, 110 S.Ct. at 459. We interpret and apply Art. 863 in the same manner.
While this appeal was pending, the law firm representing DDAI notified our clerk that the attorney who signed the petition, Gordon N. Blackman, Jr., was no longer with the firm and should not be the attorney of record. Although it is the signing of the pleading that gives rise to sanctions, we note that the signing attorney represented DDAI, on behalf of the law firm at each court hearing, including the sanction hearing. Mr. Blackman thus had notice that sanctions of counsel were sought and were imposed. We have found no abuse of discretion in the trial court's imposition of about one-tenth (or $1,000) of the sanctions on DDAI's counsel.
Under these circumstances, we amend the judgment to cast only Mr. Blackman for the $1,000 sanction. We direct our clerk to mail a copy of this opinion to him and reserve to him the right to seek a rehearing in this court on that sanction. On remand, counsel for Ferrier shall make Mr. Blackman a party to any action for additional attorney fees.

ADDITIONAL ATTORNEY FEES
Art. 863, like Rule 11, authorizes an award of "reasonable" and not necessarily actual attorney fees. The goal to be served by imposing sanctions is "not wholesale fee shifting, but correction of litigation abuse." Gaiardo v. Ethyl Corp., supra, 835 F.2d at 483.
The trial court awarded Ferrier half of the $13,000 in costs and fees associated with the TRO in the $6,500 TRO-damage award. The sanctions of $11,352 are about two-thirds of the remaining $15,000 that Ferrier was charged for legal representation. We cannot say the sanction assessment is abusively low.
Ferrier also seeks to recover attorney fees for his representation on appeal, either as a part of the Art. 863 sanction or as damages for frivolous appeal.
While we recognize the burden this litigation has placed on Ferrier, we cannot agree that the appeal, primarily seeking review of the imposition of sanctions under the recently enacted Art. 863, is frivolous, the basis for our authority to award damages under CCP Art. 2164 and URCA Rule 2-19. See and compare In Re Succession of Bradford, 550 So.2d 678 (La.App. 2d Cir.1989).
Even though we deem the appeal not frivolous, Ferrier is entitled to claim attorney fees for defending the appeal as part of the "reasonable expenses incurred because of the filing of the petition" that may be included in Art. 863 sanctions. Muthig v. Brant Point Nantucket, Inc., supra. In this case of first impression we shall not attempt to set the fee, but shall remand for a hearing to determine the amount of reasonable attorney fees Ferrier has incurred by virtue of the appeal. See and compare Allen v. Smith, supra, and Tabor v. McDermott, Inc., 521 So.2d 625 (La.App. 1st Cir.1988).

*907 DECREE
The judgment is amended to delete the name of the law firm sanctioned in the amount of $1,000 and substitute the name of the individual attorney, Gordon N. Blackman, Jr.
As amended, and at the cost of DDAI, the judgment is AFFIRMED and the case is remanded for further proceedings in accord with this opinion.
Before HALL, MARVIN, FRED W. JONES, Jr., NORRIS, and LINDSAY, JJ.

ON REHEARING
PER CURIAM.
We granted a rehearing which was sought only by attorney Blackman under our reservation to him in the original opinion. He complained generally that it is fundamentally unfair for this court to impose the CCP Art. 863 sanction on him instead of on the law firm or partner thereof at whose alleged direction he signed the pleading upon which the sanction was based.
He also complained that the Supreme Court's interpretation of Rule 11, FRCP, should not control our interpretation of La.CCP Art. 863.
In the trial court defendant Ferrier sought the sanction against DDAI and "its counsel." The judgment of July 17, 1989, sanctioned DDAI and its law firm, not Mr. Blackman who signed the pleading. While the appeal of that judgment was pending in this court, Pavelic & LeFlore v. Marvel Entertainment Group, cited in our original opinion, was decided on December 5, 1989. Pavelic & LeFlore adopted the reasoning of the Fifth Circuit in Robinson v. National Cash Register Co., 808 F.2d 1119 (5th Cir.1987).
Attorney Blackman resigned from DDAI's law firm on September 1, 1989, as our original opinion notes. The law firm's reply brief, filed here on January 12, 1990, asserted that the trial court exceeded its authority in imposing the sanction against it, citing for the first time Pavelic & LeFlore, supra. Thereafter and during oral argument, counsel for each litigant in this appeal agreed that if the sanction was upheld on appeal, it should be imposed only on the attorney who signed the pleading, Mr. Blackman, again citing Pavelic & LeFlore.
Notwithstanding that the Supreme Court's opinion in Pavelic & LeFlore was rendered while this appeal was pending, the federal Fifth Circuit, interpreting Rule 11, FRCP, had earlier held that the rule authorizes sanctions against no attorney other than the individual lawyer or lawyers who sign court papers. See Robinson v. National Cash Register Co., supra, cited in Pavelic & LeFlore, 110 S.Ct. at 458. Robinson emphasizes why the sanction is to be imposed only on the signing attorney and why the rule "discourages" satellite litigation to determine the relative culpability of other attorneys who are involved, but who do not sign the court papers.
Limiting [the] sanctions to the attorney who signs the document reduces the need for satellite litigation over exactly who was responsible for a particular document. If this view ... were not adopted, an inquiry would have to be made of the relative culpability of attorneys who did not sign but who were nevertheless involved with a particular document.... We believe that requiring such a proceeding would be contrary to the intent of the drafters ...
808 F.2d at 1129-1130.
After we granted Blackman's application for rehearing, our highest court rendered its opinion in Cooter & Gell v. Hartmarx Corp., ___ U.S. ___, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The federal appellate court had followed the reasoning of our original opinion that an appellate court could remand to allow the sanction to be increased for defending against the appeal by the litigant who was sanctioned. The Supreme Court disagreed, holding that if the appeal of the sanction was deemed to be frivolous, the appellate court should not remand under the sanction article but should award damages under the article authorizing such an award for a frivolous appeal.
*908 In the original opinion we noted that attorney Blackman had appeared and argued for DDAI and against the sanction at every hearing in the trial court and that he "thus had notice that sanctions of counsel were sought." In his application for a rehearing, he contends that he did not have notice that the sanction would be against him personally and that he was thus denied the "opportunity to be heard and allowed to call witnesses prior to having a judgment rendered against him." In our original opinion we reserved to him the privilege of seeking a rehearing especially because it was apparent that he had not been informed of the circumstances arising in the appeal after his withdrawal from his former law firm.
Notwithstanding our finding that attorney Blackman knew that the sanction was sought and imposed against DDAI and "its counsel" (the law firm with which Blackman was associated), we granted rehearing to consider Blackman's allegations of denial of due process and of signing the pleadings at the direction and insistence of a superior attorney in the law firm. He alleges that during the course of his representation it became "apparent" to him that DDAI's case "was not as strong" as it was earlier represented and that, after discussing the problem with the superior attorney, he was instructed "to be more upbeat and positive with [DDAI]."
On rehearing granted, we have reconsidered our opinion in the light of the allegations and contentions made by attorney Blackman and of the opinions in Pavelic & LeFlore and Cooter & Gell, cited supra. We again reiterate that attorney Blackman represented DDAI at each court proceeding and had ample notice that sanctions of counsel were sought and were imposed by the trial court. Having considered, and accepting, arguendo, as true, attorney Blackman's "defense," his factual contentions in his application for rehearing, we do not change our opinion casting him for the $1,000 sanction. We express no opinion as to whether he may institute a separate action against the law firm with which he was associated or whether his action against that law firm might be construed as satellite litigation that is condemned in Robinson, supra.
The critical issue, as discussed in our original opinion, is whether the inquiry into the facts and law supporting the pleadings certified by the attorney was an objectively reasonable inquiry. It is the signing or certification of the pleading by the attorney and not the "degree of culpability," as attorney Blackman argues, that subjects him to the Art. 863 sanction. The arguable "fact" that he certified the pleadings perhaps with some reluctance and only at the insistence of a superior attorney is not a defense to the sanction.
On rehearing, we recall those parts of our opinion granting Ferrier the right to additional attorney fees because of the appeal and remanding the case to the trial court to allow for that determination to be made after a hearing. We did not and do not find the appeal of DDAI and its law firm to have been frivolous, primarily because this is a case of first impression, at least in this circuit.
Our original opinion upholding the amounts imposed in the sanction by the trial court is not changed. As against DDAI, our original opinion is not changed. Our original opinion amending the trial court judgment to cast only attorney Blackman for the $1,000 sanction is not changed. We recall only that part of our original opinion that ordered a remand to allow sanctions for the appeal to be rendered by the trial court, after a hearing, in favor of Ferrier. Our interpretation of CCP Art. 863 is in accord with the interpretation of Rule 11, FRCP, in Pavelic & LeFlore, in Robinson, and in Cooter & Gell, cited supra. Our interpretation of Art. 863 here and in the original opinion will control cases which may hereafter arise in this circuit.

DECREE
Our original opinion is recalled in part, only insofar as it grants the right to additional attorney fees to appellee Ferrier and remands for that purpose. Additional attorney fees or sanctions arising out of the *909 appeal are denied Ferrier. Otherwise, the original opinion and decree are reinstated.