liLOBRANO, Judge.
These two consolidated appeals arise from the same set of operative facts which occurred during the trial of plaintiffs’ lawsuit for damages because of the injuries Eugene Brandt, Jr. received while participating in a high school football game. Plaintiffs, Judy and Eugene Brandt, Sr. and their son, Eugene Brandt, Jr. appeal the trial court’s denial of their motion for new trial or, alternatively, for judgment notwithstanding the verdict. Defendants, Bike Athletic Company, Athletic Helmet, Inc., Schutt Athletic Sales Company, Schutt Manufacturing Company, The Kendall Company, and Liberty Mutual Insurance Company, appeal the trial court’s denial of their request for sanctions which they sought because of alleged improper assertions made in plaintiffs’ new trial motion.[1]

FACTS

On October, 27, 1989, Eugene Brandt, Jr., a senior at St. Bernard High School, was participating in a high school football game against Benjamin ^Franklin High School when he suffered a crippling cervical spine injury while tackling an opposing player. Brandt and his parents filed the instant suit against the St. Bernard Parish School Board and other defendants that were associated with the helmet that Brandt was wearing at the time of his injury. Prior to trial, the St. Bernard Parish School Board and several of the defendants were dismissed from the lawsuit through either settlement or motions.
Trial proceeded on June 8, 1992 against the remaining defendants associated with the helmet and concluded on July 24,1992. During the trial, on June 17, 1992, plaintiffs’ counsel learned that defense counsel was in possession of certain witness statements which had been taken by plaintiffs’ counsel or their investigators and which had not been voluntarily given to defense counsel. The events of June 17, 1992 unfolded as follows.
Plaintiffs called St. Bernard player, Leon Williams, for examination in chief. After his direct testimony, defendants began their cross-examination of Williams. During the course of that cross-examination, Mr. John *1347 Weigel, one of defendants’ trial attorneys, produced a prior signed statement of Williams in an attempt to refresh his memory and/or impeach his testimony regarding what position Williams was playing when Brandt’s injuries occurred.[2] After having the witness identify his prior written statement and laying the proper foundation, defense counsel then offered it in evidence. Plaintiffs’ counsel, Mr. Lawrence Wiede-mann, stated “No objection.” The document was then received in evidence. Plaintiffs’ counsel then conducted redirect examination of Williams wherein counsel used the statement to rehabilitate the witness and clarify any perceived ^inconsistency in his testimony. Upon conclusion of Williams’ testimony, plaintiffs’ co-counsel, Mr. Stanley Jacobs, then asked to approach the bench.
At that point he advised the trial judge that the witness statement used by Mr. Weigel was taken by plaintiffs’ investigator, was plaintiffs’ work product and had not been voluntarily given to defendants. Mr. Jacobs then inquired of Mr. Weigel as to how he had obtained the statement, whereupon Mr. Weigel responded that he had obtained it from his co-counsel, Mr. Lawrence Ernst. Mr. Ernst responded that he had been given the statement the previous night by his paralegal in preparation for the witnesses to be called by the plaintiff that day. The trial judge then decided that an evidentiary hearing was necessary to solve the “mystery” of the statement.
On the record, each attorney gave various statements of what they did, speculated about how the statement got from plaintiffs’ file to defendants’ file and what should be done about it. In addition, Mr. Ernst’s paralegal, Ms. Robin Baker, took the witness stand and testified that, the previous night, she removed the statement from the office file, along with other witness statements, and brought them to Mr. Ernst’s home for his review. She did not know how the statement got into defendants’ office file. During the course of the hearing, Mr. Jacobs further discovered that twenty-six statements (including Williams’ statement) were missing from his file. Mr. Jacobs stated that those statements had been pulled out of his regular file by his paralegal about ten days prior (during or at the conclusion of jury selection) and were copied by her for his use in preparing his witnesses. Mr. Jacobs’ paralegal stated that she made the copies in a reduced form from the originals for ease of handling. The reduced version was the same as used by Mr. Weigel. The court then reviewed, in camera, all of the statements that were in UMr. Ernst’s files, as given to him by his paralegal, and noted that, including Williams’ statement, there were a total of six that belonged to plaintiff. The judge was able to identify those by the fact that they were witnessed by either Mr. Jacobs or his investigator.
The argument then focused on the whereabouts of the other twenty statements. The court instructed Mr. Ernst to check the office files to determine if there were other statements present. Apparently this was done during the lunch break. Mr. Ernst advised that they had no other statements. The court then requested of plaintiffs’ counsel, ‘Where do we go from here, gentlemen?” Mr. Wiedemann responded:
“As I pointed out to the court, it’s economically impossible for the Plaintiff to move for a mistrial, although part of his work product has been used thus far to cross-examine a witness, and part of the work product that was obviously obtained in a manner not in keeping with normal legal proceedings. I would suggest to the Court that, number one, that every statement that anybody has that was procured from us in this ease be returned to us, and thát no information contained in those statements be asked of any witness in this case, and if it is, we would ask that the attorneys be held in contempt ...”
After various arguments, speculations and “discussions” by the attorneys, the court or *1348 dered that the statements be returned to plaintiffs’ counsel. The court acknowledged the agreement by defense counsel that they would not use the statements, or the fact of their existence, in further cross-examination of the witnesses. The court refused plaintiffs’ request that Williams’ statement be withdrawn from evidence, noting that it had already been introduced without objection, and that plaintiffs’ counsel had used it more than did the defendant. Apparently everyone was satisfied with the court’s disposition of the matter since there were no further objections noted. Of course it was understandable that |5plaintiffs’ counsel still expressed frustration at not solving the mystery of how their statements appeared in defendants’ file.[3]
The trial continued and the next time any further reference was made to the missing statement problem was during the cross-examination of St. Bernard player Shane Es-ponge by Mr. Weigel. Esponge was questioned by Weigel about the availability and use of helmet replacement parts. Plaintiffs’ attorney Jacobs requested a sidebar conference during which he argued that Weigel was using information obtained from Esponge’s statement that had been in defense counsel’s unauthorized possession before the return of the statements to plaintiffs’ counsel on June 17, 1992. Weigel responded that the only statement belonging to plaintiffs which he had read was that of Leon Williams. Weigel stated that he had never seen Esponge’s statement, but instead, had learned about the helmet replacement parts from the depositions of two of the team’s coaches. The trial judge apparently accepted Weigel’s explanation and allowed this line of questioning to continue, but noted plaintiffs’ objection.
Following trial, the jury returned a verdict in favor of the defendants finding that the helmet was not defective. The trial judge adopted the jury verdict and rendered judgment in favor of defendants, dismissing plaintiffs’ suit at their costs.
Plaintiffs filed a motion for new trial or, alternatively, for judgment notwithstanding the verdict. In their memorandum in support of this motion, plaintiffs alleged that defendants’ unauthorized possession of plaintiffs’ work |6product, i.e. the witness statements, prejudiced their case to such an extent that a new trial was warranted. The motion for new trial was denied by the trial judge without written reasons.
MOTION FOR NEW TRIAL (Appeal No. 93-CA-1416)
Plaintiffs appeal the denial of their motion for new trial and limit their appeal to one issue: Did the use and possession of plaintiffs’ witness statements by defendants prejudice plaintiffs’ case so greatly that only a new trial can remedy this alleged injustice? Plaintiffs suggest that defense counsel may have also reviewed other undiscoverable documents and work product in the files and boxes containing the witness statements. Plaintiffs argue that the mere return of the statements was not sufficient to remove the prejudice to plaintiffs’ case because defendants had obtained an unfair advantage by knowing in advance all of the strengths and weaknesses of plaintiffs’ ease and that plaintiffs were unable to overcome this unfair advantage.
Plaintiffs’ brief deals almost exclusively with arguments and theories as to how defendants obtained the witness statements. Defendants do not dispute that they were in possession of these statements; however, they disclaim any knowledge as to how these items came into their possession.
Although plaintiffs argue at length their theories as to how defendants obtained the witness statements, they fail to present any specific arguments on the more critical issue *1349 of how their case was prejudiced by defense counsel’s possession of those statements.
Louisiana Code of Civil Procedure article 1973 states that “a new trial may be granted in any ease if there is good ground therefor, except as otherwise ^provided by law.” An appellate court has the authority to determine whether a trial judge abused his discretion in not granting a new trial. Garrett v. Universal Underwriters, 586 So.2d 727 (La.App. 3rd Cir.1991).
Plaintiffs have not demonstrated either in their appeal brief, or in their memorandum in support of their motion for new trial, how the trial judge’s denial of this motion was an abuse of his discretion. Plaintiffs rely only on their unproven theory that defense counsel must have reviewed plaintiffs’ entire file before trial and gained unauthorized insight as to how plaintiffs’ case was going to develop. In their memorandum, plaintiffs made only general, conclusory statements about how valuable the player statements were to defendants because they included information about the tackle which caused Brandt’s injury, coaching techniques and other unnamed factors. Plaintiffs did not state what specific information was contained in the statements which was so crucial that knowledge of this information by defense counsel prevented plaintiffs from receiving a fair trial.
The trial judge conducted an evidentiary hearing on the issue of how defense counsel obtained plaintiffs’ witness statements. The trial judge questioned whether plaintiffs wanted to resolve this situation by requesting a mistrial or by having the statements returned to them or by some other option. Plaintiffs rejected the judge’s offer to declare a mistrial and agreed to the solution of having the statements returned to them with an agreement by defense counsel not to use the information contained in the statements.[4] Plaintiffs have not established that the |sway the trial judge handled this situation prejudiced them. In the absence of any specific showing of prejudice, we find no error in the trial court’s denial of plaintiffs’ motion for new trial.

SANCTIONS

In support of his motion for new trial, plaintiffs’ attorney, Stanley Jacobs, filed a fourteen page memorandum. The majority of the memorandum is focused on the missing statements. Although Mr. Jacobs’ legal argument is the prejudice occasioned by the missing statements, he focuses on various unfounded factual conclusions about the defense attorneys, Mr. Weigel and Mr. Ernst.
After the trial judge denied the motion for new trial, defendants filed a motion for sanctions predicated on the accusations made by Mr. Jacobs in his memorandum. After reviewing memoranda submitted by both parties on the issue of sanctions, the trial judge denied the motion, but commented as follows in his reasons for judgment:
“Sanctions, while perhaps warranted, have not been imposed because there is no question that portions of plaintiffs file found its way into defendants’ hands. While it is yet unclear how the materials came into the hands of the defense, it is nevertheless regretful that Mr. Jacobs has leveled a charge of theft without knowledge of the person or persons responsible. This is especially true in light of plaintiff attorneys’ own negligence in allowing unsupervised access to their files despite receiving a cautionary warning from the court.”
Defendants perfect this appeal arguing that the trial judge erred in not imposing sanctions. They cite passages from Mr. Ja *1350 cobs’ memorandum in support of their assertion. Those are set forth in the attached appendix.
Code of Civil Procedure article 863 provides, in pertinent part, as follows:
|9B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
[[Image here]]
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney’s fee.
Article 863 requires the attorney or litigant who signs a pleading to make an objectively reasonable inquiry into the facts and law. Borne v. New Orleans Health Care, Inc., 616 So.2d 236 (La.App. 4th Cir.1993), writ denied, 623 So2d 1332 (La.1993). If a court finds that the conduct of a signing attorney is improper or unreasonable under article 863, the court is required to fashion an appropriate sanction. Romero v. Chris Crusta Flying Service, Inc., 587 So.2d 803 (La.App. 3rd Cir.1991).
The “abuse of discretion” standard of appellate review applies to the trial court’s finding that a violation of article 863 has occurred and to its determination of the amount and type of sanction imposed. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2nd Cir.1990). In the instant case, even though the trial judge did not award sanctions, the trial judge found that | ip Jacobs had “leveled a charge of theft without knowledge of the person or persons responsible.” We agree with that statement.
A complete reading of the memorandum leads to the inescapable conclusion that Jacobs accuses defendants’ attorneys of stealing plaintiffs’ statements. To accuse a member of the bar of stealing an opponent’s documents during the course of a judicial proceeding is a serious accusation and should be supported by well-investigated facts. In the instant case, there is no evidence that Jacobs did any further investigation after the June 17th hearing or that he obtained any further knowledge regarding the disappearance of his statements. The offensive assertions in Mr. Jacobs’ brief are unsupported and unwarranted. And, as we previously noted, although we can understand the frustration he experienced, Mr. Jacobs’ memorandum should not have contained the derogatory and unprofessional remarks that it did. His accusations of defense counsel’s impropriety and unprofessionalism are themselves improper and unprofessional.
Although “in the heat of battle” lawyers sometimes make unprofessional remarks, the subject memorandum was obviously written after trial and with the opportunity for “cooler” reflection. It would have been a simple matter to argue the merits of the issue without making unfounded personal accusations.
We find no merit in plaintiffs’ argument that defendants’ motion for sanctions was untimely. Plaintiffs base this argument on the fact that the motion was filed after the order of appeal in this case was granted. Plaintiffs claim that the trial court was divested of jurisdiction when the motion for sanctions was filed and had no authority to rule on the motion because appellate jurisdic *1351 tion had attached. However, because the issue of sanctions was a new one and not part of | nthe appeal filed by plaintiffs, the trial court retained jurisdiction to consider it even though filed after the appeal order had been granted. See, Veillon v. Veillon, 602 So.2d 215 (La.App. 3rd Cir.1992), writ denied, 605 So .2d 1375 (La.1992).
We also find no merit in the plaintiffs’ argument that an appellate court cannot disturb a trial court’s ruling on a motion for sanctions. Plaintiffs cite the case of Hampton v. Greenfield, 618 So.2d 859 (La.1993), as authority for this proposition. However, in Hampton, sanctions were requested for the first time on appeal. The Louisiana Supreme Court held that the Court of Appeal could not award sanctions where no request was made in the trial court because the imposition of sanctions is within the province of the trial court where evidence can be presented on the issue. This is distinguishable from the instant case where we are reviewing a trial judge’s ruling on a sanctions motion which was made after the submission of memoranda and other evidence by both parties. Neither the Hampton case nor any other authority precludes this court from reviewing the trial judge’s decision on a motion for sanctions.
We determine sanctions are in order in this ease. In our opinion, Mr. Jacobs’ memorandum crossed the line between zealous representation and unprofessional conduct. The legal profession, possibly more than any other, demands integrity, professionalism and a strict adherence to the rules of propriety. Article 863 provides the mechanism for assuring that when an attorney signs a pleading, it is done so only after reasonable and objective inquiry show that it is well grounded. Here, we agree with the trial judge that Stanley Jacobs leveled a theft charge against defendants’ attorneys without knowledge of the persons responsible.
| Accordingly, in Appeal 93-CA-1416, we affirm the trial court judgment denying plaintiffs’ motion for new trial. In Appeal 93-CA-0457, we reverse the trial court judgment denying defendants’ motion for sanctions and we impose sanctions against Mr. Jacobs in the amount of $1,000.00.
93-CA-1416 JUDGMENT AFFIRMED.
93-CA-0457 JUDGMENT REVERSED AND RENDERED.
|,APPENDIX
This unprecedented breach of professional ethics so poisoned the impartiality of this trial that plaintiffs are entitled to a new trial ... [page 1]
It is quite ironic that the revelation of plaintiffs’ stolen statement came to light on the 20th anniversary of the Watergate burglary which also involved the theft of documents. The difference between this theft and the Watergate theft was that the perpetrators of the Watergate burglary were punished for their actions while those responsible for this theft were never held accountable for their misdeeds, [pages 1-2]
The only way these statements could have made their way into the defendants’ hands was that they were taken from plaintiffs’ file, [page 3]
The critical fact is that plaintiffs’ reduced statement file had to be stolen after trial started ... [page 3]
It defies belief that he [Mr. Ernst] could look at plaintiffs’ statements and not know that these were statements not taken by his investigators, [page 4]
Third, the attitude of defense counsel even after they were caught redrhanded with plaintiffs’ statement was astounding. [page 4]
Mr. Weigel made the argument that it was “much ado about nothing” and seemed to imply that the ends somehow justify the means, [page 4]
It did not seem to matter to defense counsel that plaintiffs’ statements were improperly obtained, [page 4]
What, then, happened to the second copy of the statements kept by defendants?
*1352 Since their existence was confirmed by Ms. Baker, undersigned counsel submits that defendants are still in possession of them in violation of the Court’s order to return them, [page 5]
This is a prime example of the mentality of defense counsel throughout the trial. To inappropriately obtain plaintiffs’ statements is shocking enough; to have the audacity to introduce it into evidence is astounding, [page 5]
^Defendants obviously have no respect for plaintiffs’ counsel or even the Court, [page 5]
The fact that defendants felt that they could do anything and get away with it in Your Honor’s Court was no surprise in hindsight there were many times leading up to trial when defense counsel felt they could abuse this Court without fear of reprimand, [page 5]
In hindsight, it is clear to see defendants, after seeing they could operate without fear of reprisal from the Court, culminating their “Rambo” tactics by improperly obtaining plaintiffs’ statements and introducing them into evidence right under the Court’s nose, [page 6]
Plaintiffs respectfully submit that the court’s remedy, once the stolen statements were discovered, was inadequate, [page 6]
Plaintiffs’ counsel also asked that no information contained in any of the stolen statements be asked of any witness in this ease, [page 6]
At the sidebar, Mr. Weigel even called Mr. Jacobs “a God damn liar,” ... further proof that defendants were supremely confident that they could get away mth anything in this Court and not be held accountable for it. [page 6]
Should the plaintiffs be penalized because of the skullduggery of the defendants ... [page 6]
Why was it that plaintiffs’ statement file was taken? The answer may be a simple one: filling a gap in defendants’ case. [page 7]
The prejudice that plaintiffs have suffered as a result of the theft of their statement file goes much farther than the statements themselves, [page 7]
The fact that the statements were taken from among the plaintiffs’ entire case file means that the perpetrator(s) had the opportunity and must have looked through plaintiffs’ entire case file, [page 7]
This advance notice of plaintiffs’ “battle plan” provided an immeasurable edge to defendants ... [page 7]
| ¡¡The theft of the statements, therefore, was only the “tip of the iceberg” of the prejudice that plaintiffs have sustained, [page 7]
Plaintiffs submit that these proceedings have been so irreparably poisoned by the theft of a portion of plaintiffs’ file that the only possible way to remedy this injustice is to grant plaintiffs a new trial and tax the cost of the first trial to defendants, [page 8]
A message should be sent to lawyers that this court will not tolerate lawyer impropriety to such an outrageous degree. [page 8]
Undersigned counsel would also strongly urge the Court not to let this matter rest, but aggressively refer it to the Bar Association. [page 8]
Putting all the legal issues aside, a more human question is this: what type of person would stoop so low, in trying to “win at all cost”, to commit a criminal act in order to beat a young boy who will be stuck in a wheelchair for the rest of his life? [page 9] (emphasis theirs)

. Appeal 93-CA-1416 involves the trial on the merits, the motion for new trial and the corresponding judgments. Appeal 93-CA-0457 involves the motion for sanctions and the judgment on that motion.

. The record shows that there were some inconsistencies in Williams’ trial testimony and the prior statement with respect to whether he was playing tackle or linebacker at the time of Brandt's accident,

. Speculation was the order of the day. Plaintiffs’ attorney continually speculated that someone deliberately stole the statements. Mr. Wied-emann went so far as to have all the attorneys state that they did not take the files. They all so stated. Defendants' attorneys speculated that the statements were inadvertently picked up and placed in defendants’ files at a time when various exhibits and other documents were "spread out” on the various counsel tables in the St. Bernard council chambers during and after jury selection.

. Plaintiffs first learned that defense counsel was in possession of the witness statements on June 17, 1992. They could have requested a mistrial at that time if they considered possession of those statements by defense counsel to be so prejudicial to their case as to deprive them of a fair trial, but they chose not to do so. Further, as the trial developed, plaintiffs could have sought a mistrial if it appeared they were being prejudiced by the occurrence of June 17th. It is apparent that they waited until the outcome of the trial to revisit the issue. The motion for new trial did not contain any information other than what had already been brought out at the June 17, 1992 evidentiary hearing.