463 So.2d 45 (1985)
"BUGS" BURGER BUG KILLERS, INC.
v.
Richard G.M. KEISER.
No. 84-CA-215.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 1985.
Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, Mary Ann Coffey, Albert H. Hanemenn, Jr., New Orleans, for plaintiff-appellant.
Thomas A. Kehoe, Metairie, for defendant-appellee.
Before BOUTALL, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
This is an appeal by a former employer against a former employee to enforce a nonsolicitation agreement. The trial court denied the preliminary injunction, and the plaintiff, employer, appeals. We affirm.
"Bugs" Burger Bug Killers, Inc. filed a petition for writ of injunction to enforce an employment agreement between itself and its former employee, Richard G.M. Keiser, to enjoin its former employee from soliciting, contracting, and providing pest control services to Burger's customers. Keiser's employment with Burger began on November 22, 1977 at which time he agreed to the following contract, which, in pertinent part, states:
The party of the first part [Keiser] agrees not to solicit or service directly or indirectly, or in any way molest or attempt to damage the relationship between the party of the second part *46 [Burger] and any and all of its customers for a period of two years following termination of his or her employment.
Keiser had been hired by Burger to sell pest elimination services to restaurant and hotel industries. His responsibilities were to solicit potential customers and to follow-up on requests for information or services received in Burger's national Florida offices. (Burger is a national pest elimination company licensed to do business in Louisiana. During Keiser's employment, Burger had carried out an extensive national advertising campaign, and Keiser had responsibility for customer response in Louisiana.) Keiser left Burger's employ on April 22, 1983 and began employment with Academy Pest Elimination Service Technical, Inc. on July 1, 1983. In an effort to solicit Burger's customers, Keiser sent out mailings and made personal contacts.
One primary issue is presented:
whether the statutory prohibition of noncompetition agreements (Louisiana Revised Statute 23:921) applies to nonsolicitation clauses.
Our statutory law in Louisiana Revised Statute 23:921 provides:
No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years.
Our jurisprudence has found no distinction between noncompetitive and nonsolicitation agreements by holding that Louisiana Revised Statute 23:921 is applicable to a nonsolicitation clause. They have further stated that such a clause which prohibits former employees from soliciting their former employer's customers are unenforceable unless the statutory proviso applies that the employer show expenditures of substantial sums in the training of the employee or in advertising the employee's connection with his business. National Motor Club of Louisiana, Inc. v. Conque, 173 So.2d 238 (La.App.3d Cir.1965), certiorari denied, 247 La. 875, 175 So.2d 110; Napasco International, Inc. Western Division v. Maxson, 420 So.2d 1276 (La. App.3d Cir.1982); National Oil Service of Louisiana, Inc. v. Brown, 381 So.2d 1269 (La.App. 4th Cir.1980); ADR v. Graves, 374 So.2d 699 (La.App. 1st Cir.1979); Orkin Exterminating Company, Inc. v. Broussard, 346 So.2d 1274 (La.App.3d Cir.1977); Alexander & Alexander, Inc. Simpson, 370 So.2d 670 (La.App. 4th Cir.1979). We agree with this jurisprudence and its rationale as given in Alexander & Alexander, Inc. v. Simpson, 370 So.2d 671, supra, which states that:
An examination of the wording of the statute confirms this position by use of the word "any" before "competing business." This phrasing convinces us that the prohibition was intended to be broad enough to include not only the operation of a similar business, but also components of the business operation, such as solicitation of customers. Solicitation of business is certainly a part of competition.
We now consider whether this employer showed expenses of substantial sums in the training of this employee or in advertising this employee's connection with his business which would then make this nonsolicitation agreement enforceable. In this regard we are guided by our Louisiana Supreme Court in Orkin Exterminating *47 Company v. Foti, 302 So.2d 593 (La.1974), which states, in pertinent part:
If an employer extensively advertises a particular employee as the man to go to for the employer's type of services, it is not unfair to protect the employer's investment in this particularized asset by authorizing a limited non-competition agreement to prevent the advertised employee from misusing it. If an employer spends a substantial sum affording special training to an employee, it may not be unfair to protect the employer by authorizing a limited non-competition agreement to prevent the employee from using this specialized training for the benefit of another in competition with his former employee.
However, as the Conque line of cases holds, normal expenses of administration and supervision  such as employee sales and training meetings, the time spent breaking in a new employee, training courses in the administrative needs of the employer itself  cannot be considered the sort of "training" expense intended to justify the heavily disfavored non-competition agreement. Almost any employer could so tie his employees to their present employment by exacting a non-competition agreement. As Conque noted, 173 So.2d 241: "What the legislators must have intended, it seems to us (since they did not repeal the basic prohibition against such contracts as void as against the public policy of the state), was to protect the investment of those employers who afford special training of a substantial nature to their employees, and to encourage them to do so."
The trial judge in his oral reasons for judgment found:
There has not been one iota of evidence that's been presented to this court,  not one  a single fact was brought to show that there was any expense paid by Mr. Burger for the train (sic) of Mr. Keiser.
Our review of the testimony reveals that during Keiser's employment, although Burger had carried out an extensive national advertising campaign, there was no advertisement linking Keiser and the business, nor was there any testimony demonstrating substantial sums which afforded special training for Keiser. Therefore, we find no manifest error in the trial court's factual findings. See, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the reasons assigned, the judgment of the trial court is affirmed; all costs of this appeal are to be assessed against the appellant.
AFFIRMED.