847 So.2d 20 (2003)
CREATIVE RISK CONTROLS, INC.
v.
S.F. BRECHTEL, Jr., Management Services USA, Inc., (Delaware Corporation), Management Services USA, Inc., (Louisiana Corporation), Cannon Cochran Management Services, Inc., d/b/a Management Services, Inc., Sam P. Cannon, Grover C. Cone, Jr., John Remond, Jerry R. Armatis and Carl O. Ayestas, Jr.
No. 01-CA-1150.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2003.
Rehearing Denied May 19, 2003.
*21 William W. Hall, Metairie, LA, and Jerome M. Volk, Jr., Kenner, LA, for Plaintiff/Appellant (Creative Risk Controls, Inc.).
Gary J. Giepert, Jack A. Ricci, New Orleans, LA, for Defendants/Appellees (Sam Cannon and Cannon Cochran Management Services, Inc.).
*22 T. Allen Usry, John F. Weeks, II, New Orleans, LA, for Defendants/Appellees (Management Services, USA, Inc., Grover Cone, Jr., Jerry R. Armatis and Carl O. Ayestas, Jr.).
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Plaintiff, Creative Risk Controls, Inc., (CRC), filed suit against defendants for breach of contract; breach of fiduciary duty and usurpation of corporate opportunity; misappropriation of proprietary information and trade secrets; unfair trade practices; conversion, misappropriation and destruction of customer records; and shareholder liability. Defendants, Sam Cannon and Management Services, USA, Inc., filed a reconventional demand against CRC for bad faith claims. Defendant, Sheldon F. Brechtel, filed a reconventional demand.
Thereafter, all defendants filed a motion for summary judgment. The trial court granted summary judgment in favor of all defendants except Brechtel. After the denial of its motion for new trial, CRC filed this appeal.

FACTS
CRC is a Louisiana Corporation. It is a risk management company engaged in the business of providing risk management services and third party claims administration to clients. Bennett Powell and others formed CRC in January of 1992. In June of 1994, CRC entered into an Employment Agreement with Sheldon Brechtel, employing him as president of CRC. In August of 1995, CRC entered into an Employment Agreement with Grover C. Cone, Jr., employing him as Vice President/Claims Manager. Also in August of 1995, CRC entered into an Employment Agreement with John Remond, employing him as Safety and Loss Control Manager.[1] Jerry R. Armatis was employed by CRC, part time, in sales. Carl O. Ayestas, Jr. was retained by CRC as an independent contractor to assist in the handling of marine insurance risks.
Cannon Cochran Management Services, Inc. (MSI), a third party claims administration company, is a foreign corporation. Sam Cannon is the President of MSI.
The undisputed facts reflect that Powell hired Brechtel to run a branch of his insurance agency called Creative Risk Control (CRC). Thereafter, in September of 1995, Brechtel attended the Self-Insured Institute of American Conference. At that time, he met Cannon, who was interested in acquiring a casino business in Illinois. Cannon met with CRC personnel in New Orleans, in November, and followed that meeting with the letter dated November 29, 1995.
In January of 1996, Brechtel and Armatis met with Cannon while in Las Vegas. Cannon expressed his desire that key people have ownership interest in any entity with which MSI would do business. Brechtel and Armatis related that they had asked Powell, but were denied. They began discussing the possibility of a new entity. Upon return to New Orleans, Powell again declined opportunity for ownership.
In late January, while in Chicago to meet with contracts of CRC, Brechtel also met with MSI personnel. Armatis, who had flown up at his own expense, was also present. At that time, they discussed the possibility of a joint venture.
After the January meeting, Cannon addressed a memo to Board of Directors, in *23 which he stated his requirement for ownership and discussed a joint venture. In the memo he noted his concern that key people had no ownership interest in CRC, and he discussed the possibility that CRC's employees would resign.
Brechtel resigned on February 12th, as did the other personnel. On February 14th, he formed Management Services USA, Inc. (La.MSUSA), a corporation organized under the laws of the State of Louisiana. That company never issued stock or conducted business, and it was dissolved in August of 1996. In March, Brechtel and the other ex-CRC employees formed MSUSA, LLC, whose assets were later transferred to Management Services USA, Inc. (MSUSA), a foreign corporation, licensed as a third party administrator by the Louisiana Commissioner of Insurance.

ALLEGATIONS
In the petition for relief, plaintiff alleges that Brechtel, Cone and Remond breached their respective employment agreements with CRC. CRC further alleges that these parties (or Brechtel) violated the non-competition clause of their employment agreements. CRC also alleges that Brechtel breached his fiduciary duty, and that Brechtel, MSUSA, MSI and Cannon committed acts which caused usurpation of corporate opportunity. Next, CRC alleged that Brechtel, Cone, MSUSA, MSI and Cannon misappropriated proprietary information and trade secrets. CRC further alleges violations of the Louisiana Unfair Trade Practices and Consumer Act against Brechtel, MSUSA, MSI and Cannon. Finally, CRC alleges shareholder liability against Brechtel, MSI, Cannon, Armatis and Ayestas for dissolution of La.MSUSA.
In his reasons for judgment, the trial court stated that his judgment "granted relief to all parties except Sheldon F. Brechtel, Jr. Brechtel, as President, assumed certain duties that the other officers/employees did not assume. Whether Brechtel breached his contractual/fiduciary responsibilities should be resolved at trial on the merits."
In this appeal, CRC alleges that the trial court erred in applying a double standard among CRC's former employees, contrary to Louisiana law. CRC further argues that the trial court erred in granting summary judgment to some defendants while recognizing that disputed material issues of fact existed as to Brechtel, where those same issues of fact are equally disputed and material to its claims against all of the defendants. The trial court's ruling denying the summary judgment in favor of Brechtel is not before us at this time. We limit the issues before us to whether the trial court erred in granting summary judgment in favor of the former employees, and the corporate defendants, without consideration of the correctness of the ruling against Brechtel.

ANALYSIS
A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Summary judgments are now favored in the law and the rules should be liberally applied. Susananbadi v. Johnson, 97-91 (La. App. 5 Cir. 9/17/97), 700 So.2d 886. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. LSA-C.C.P. art. 966; Perricone v. East Jefferson General Hospital, 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48.
The mover bears the burden of proof. Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. *24 Perricone v. East Jefferson General Hosp., supra. Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; McVay v. Delchamps, Inc., 97-860 (La.App. 5 Cir. 1/14/98), 707 So.2d 90.
Schroth v. Seminole Supermarket, Inc., 02-318 (La.App. 5 Cir. 9/30/02), 829 So.2d 597, 598.
Plaintiffs first allege that the trial court erred in failing to find material issues of fact to the question of whether defendants Cone, Armatis, and Ayestas, and the corporate defendants, committed the intentional torts of unlawful breach of fiduciary duty, conversion, misappropriation and usurpation of corporate opportunities. CRC also alleges that the trial court erred in failing to find a breach of duty on the part of its former employees. Further, these alleged breaches of duty constitute an unfair trade practice. In support of its position, CRC cited the case of Cenla Physical Therapy & Rehabilitation Agency v. Lavergne, 94-1538 (La.App. 3 Cir, 5/3/95), 657 So.2d 175, 177, which stated that "employees under certain circumstances owe a fiduciary duty to their employer." However, actions taken before termination of employment to prepare for a competing business do not necessarily constitute a breach of fiduciary duty or an unfair trade practice.
Our analysis of this matter is guided by the case of Nursing Enterprises, Inc. v. Marr, 30,776 (La.App. 2 Cir. 8/19/98), 719 So.2d 524, 527-8. In that case the court, citing the cases of United Group of Nat. Paper Distributors, Inc. v. Vinson, 27,739 (La.App. 2 Cir. 1/25/96), 666 So.2d 1338 and Wyatt v. PO2, Inc., 26,675 (La.App. 2 Cir. 3/1/95), 651 So.2d 359), said:
Acts which constitute unfair or deceptive trade practices are not specifically defined, but are determined on a case-by-case basis. Conduct is considered unlawful when it involves fraud, misrepresentation, deception, breach of fiduciary duty or other unethical conduct. A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition.
In determining what constitutes unfair competition, the court must balance the right of the employee to individual freedom on the one hand and the right of the employer to honest and fair competition and to protection of business assets and property in the nature of trade secrets on the other hand. Generally, in the absence of a contrary agreement, an employee is free to compete with a former employer.
This court stated in United Group, supra:

Without a restrictive agreement, at the termination of her employment, an employee can go to work for a competitor or form a competing business. Even before termination, the employee can seek other work or prepare to compete, except that she may not use confidential information acquired by her from her previous employer. As noted by the court in Wyatt, supra, an employee's involvement in forming a competitive entity, including the solicitation of business and the hiring of employees, prior to the terminating her current employment relationship, is not an unfair trade practice.
In addition, the solicitation of customers after the end of an employment relationship does not form the basis for a claim of unfair competition. Further, an employee who enters business in competition with her former employer necessarily *25 utilizes the experience she acquired and the skills she developed while in her former employment.
Competition and free enterprise are favored. As long as conduct is neither unlawful nor offensive to public policy, persons are able to discuss changes of employment, effectuate a change in employment, plan to compete and take preliminary steps in furtherance of that plan.
As in Nursing Enterprises, Inc. v. Marr, supra, plaintiffs have alleged claims of unfair trade practices and breach of duty caused by defendants' action in creating a competing business.
CRC has first alleged that the trial court erred denying its breach of contract claim, based on the employment agreement signed by Cone. CRC alleged in its petition that the contract contains a non-competition clause. In this case, the clause at issue provides that the employee will "refrain from soliciting customers of Creative for any type insurance business" for a period of two years. In conjunction with this claim, CRC also alleges usurpation of corporate opportunity, alleging that MSUSA obtained at least one account in direct competition with CRC.
Non-competition clauses are governed by La. R.S. 23:921. The provisions of La. R.S. 23:921 are also applicable to non-solicitation clauses. "Bugs" Burger Bug Killers, Inc. v. Keiser, 463 So.2d 45 (La.App. 5 Cir.1985). Louisiana has a strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX (La.6/29/01), 808 So.2d 294; Bail Bonds Unlimited, Inc. v. Chedville, 01-1401 (La. App. 5 Cir, 10/29/02), 831 So.2d 403. Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. SWAT 24 Shreveport Bossier, Inc. v. Bond, supra.
The clause at issue is a non-solicitation, and not a non-competition, clause, and only prevents the solicitation of customers of CRC. Accordingly, there is no breach of contract in working for a competing business.
CRC also objects to the dismissal of its claim for misappropriation of proprietary information and trade secrets, against Cone and MSUSA.
The Louisiana Trade Secrets Act, R.S. 51:1431, et seq, defines a trade secret as:
"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
The plaintiff in a trade secret case bears the burden of proving "both the existence of a legally protectable secret and a legal basis upon which to predicate relief." Wyatt v. PO2, Inc., supra at 363.
The trial court found that plaintiff failed to provide any evidence to support these claims, stating that "Defendants have affirmatively established: that the customers of third-party administration *26 firms are widely known in the industry; and that the rates and other information contained in brochures promulgated by CRC was made freely available to potential customers with no restrictions on its use."
CRC next alleges that the trial court erred in finding no disputed facts and in dismissing the claim of unfair trade practices (Louisiana Unfair Trade Practices Act-LUTPA), against MSUSA, MSI and Cannon. In brief, CRC admits that these claims are based on the same factual allegations as its claims for breach of fiduciary duty and misappropriation of proprietary information. The trial court found, and we agree, that:
... CRC has failed to establish that any defendant utilized any information which would be classified as proprietary. One does not violate LUTPA by utilizing the experience acquired and the skills developed while in one's former employment or profession. Moreover, the mere fact that each individual defendant brought with his knowledge of previous business contacts and relationships and specialized knowledge of the third-party administration business does not constitute a violation of LUPTA.
In their claims against MSI and Cannon, plaintiffs allege that they conspired with the officers of CRC in breach of fiduciary duty, usurpation of corporate opportunities, unfair trade practices and misappropriation of trade secrets. We have found however, that the undisputed facts do not support these claims. We are in agreement with the trial judge, who said that these defendants had no contract or legal relationship with CRC, and that there has been no evidence to show that these defendants acted in any illegal manner and no evidence of unfair methods of competition. Further, there was no evidence of any directive, request or knowledge by Cannon or MSI of any breaches of duty, usurpation of corporate opportunity, or alleged trade secret violations. Finally, plaintiff cannot support a claim for intentional interference with contractual relations, because CRC did not have a contract with any corporation in which Cannon of MSI was an officer. 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989).
Finally, appellants allege that the trial court erred in finding no issues of material fact regarding shareholder liability. Defendants presented evidence to show that La.MSUSA never operated. Because the company never performed any acts, defendants cannot be liable for the acts of that company.
For the above-discussed reasons, we find no error in the trial court's determination that there were no material issues of fact, and that the defendants' were entitled to summary judgment as a matter of law. Accordingly, the judgment of the trial court dismissing defendants is affirmed.
AFFIRMED.
NOTES
[1] CRC compromised its claims with Remond and he was dismissed from this suit.